OPINION
{¶ 1} Wayne G. Jordan ("Jordan") appeals from a judgment of the Darke County Court of Common Pleas, which granted summary judgment in favor of Insurance Company of North America ("ICNA") on his claims for underinsured motorist coverage under two policies issued by ICNA to Truckstops Corporation of America, now known as TCA Properties, Inc. ("TCA"). ICNA has filed a cross-appeal, claiming that the trial court should have based its judgment on different grounds.
 {¶ 2} On November 21, 1986, a vehicle operated by Wayne Jordan was struck broadside by another vehicle driven by William McDaniel when McDaniel failed to yield at a stop sign on U.S. Route 127 in Darke County. As a result of the accident, Jordan sustained a spinal cord injury, rendering him a permanent paraplegic. Jordan settled his claim against McDaniel for the limits of McDaniel's insurance. At the time of the collision, Jordan resided with his wife, Linda Jordan, who was employed by TSA, a subsidiary of The Standard Oil Company.
 {¶ 3} In 2001, Jordan brought suit, pursuant to R.C. 2317.48, seeking to obtain discovery of unknown insurance policies which might provide underinsured motorist coverage for his damages. On January 9, 2002, Jordan moved to add ICNA as a party-defendant, seeking coverage under a general liability policy (policy number 313683-8) and a commercial automobile policy (policy number SCA 5031) (collectively, "the Primary Policy"), as well as an excess blanket catastrophe liability coverage policy (policy number SCG GO 313684-A) ("the Excess Policy"), all issued by ICNA to Standard Oil and naming Standard Oil and its subsidiaries as named insureds. The Primary Policy provided bodily injury liability coverage in the amount of $1,000,000.00 per accident. The policy contained an uninsured motorist coverage endorsement, which ICNA asserts was limited to the minimum amount permitted by law in each state. The Excess Policy provided bodily injury liability coverage in the amount $9,000,000.00 per accident. As recognized by Jordan, the declaration of coverage page makes no mention of uninsured/underinsured motorist coverage. However, he notes that the Excess Policy also included a "Schedule of Underlying Insurance" endorsement (Endorsement 2), which referenced and incorporated the Primary Policy.
 {¶ 4} ICNA moved for summary judgment, claiming that TCA was self-insured, that R.C. 3937.18 does not apply to the policies, and thus that underinsured motorist coverage does not arise by operation of law. ICNA further argued that neither policy provided coverage for Jordan's claims, and that Jordan had failed to comply with the conditions precedent to coverage. Jordan also requested summary judgment against ICNA, maintaining that he was an insured under both policies, pursuant to the Supreme Court of Ohio's interpretation of "insured" in Scott-Pontzerv. Liberty Mutual Ins., 85 Ohio St.3d 660, 710 N.E.2d 1116,1999-Ohio-292, and Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 715 N.E.2d 1142, 1999-Ohio-124.
 {¶ 5} In granting summary judgment in favor of ICNA and ruling against Jordan on his motion, the trial court first concluded that TCA was not self-insured and thus it was subject to R.C. 3739.18. The trial court further rejected ICNA's argument that Jordan could not prevail, because the company had not received notice of the collision and Jordan had settled with McDaniel without notice to ICNA or to TCA and without protecting the company's subrogation rights. The court found that genuine issues of material fact on the issues of notice and subrogation precluded summary judgment to both ICNA and Jordan. Upon review of the terms of the Primary Policy, the court evaluated the definition of "insured" which appeared on pages 5 and 6 of that policy. The court found no ambiguity in the definition, and it concluded that Jordan was not an insured under the terms of the policy "since his operation at the time of the motor vehicle collision in 1986 was not within the conditions of the policy." Similarly, upon review of the definition of "insured" on pages 2 and 3 of the Excess Policy, the trial court likewise concluded that no ambiguity existed and that Jordan was not an insured.
 {¶ 6} Jordan asserts two assignments of error on appeal. ICNA has cross-appealed, also asserting two assignments of error.
I. JORDAN'S APPEAL
 {¶ 7} I. "The Trial Court erred to the prejudice of Plaintiff-Appellant, Wayne G. Jordan, in granting summary Judgment in favor of Defendant-Appellant, Insurance Company of North America, and denying Plaintiff-Appellant's motion for summary Judgment on his claim for declaratory relief on Insurance Company of North America business auto policy number SCA 5301."
 {¶ 8} II. "The Trial Court erred to the prejudice of Plaintiff-Appellant, Wayne G. Jordan, in granting summary Judgment in favor of Defendant-Appellant, Insurance Company of North America, and denying Plaintiff-Appellant's motion for summary Judgment on his claim for declaratory relief on Insurance Company of North America excess blanket catastrophe liability policy number SCG GO 313684-A."
 {¶ 9} On appeal, Jordan claims that Endorsement 37 to the commercial automobile policy defines an "insured" as "You or any family member," and that an individual who is an insured under that underlying commercial automobile policy is likewise an insured under the Excess Policy. Jordan asserts that the language in the automobile policy is "nearly identical" to the policy language in Scott-Pontzer and Ezawa. He thus argues that "you" includes Linda Jordan, an employee of TCA, and that, under Ezawa, her family members (i.e., Wayne Jordan) are also insureds under the policies. Jordan argues that the trial court erred when it failed to apply the holdings in Scott-Pontzer and Ezawa in this action.
 {¶ 10} Recently, in Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 797 N.E.2d 1256, 2003-Ohio-5849, the Supreme Court of Ohio limited the holding of Scott-Pontzer and overruled Ezawa. The supreme court held that absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs during the course of employment. Id.; Clancy v. Erie Ins. Group, Montgomery App. No. 19865,2003-Ohio-6890, ¶ 28. Because Ezawa has been overruled, any uninsured or underinsured motorist coverage to which an employee may have been entitled would not extend to her family members unless the employee is a named insured under the policy. Galatis, supra; Brown v. Travelers Ins.,
Stark App. No. 2003CA0076, 2004-Ohio-19.
 {¶ 11} Because Ezawa is no longer good law, Jordan cannot be an insured under the policies unless his wife, Linda Jordan, was a named insured under those policies. It is undisputed that the policies at issue named Standard Oil and its subsidiaries as the insureds and that Linda Jordan was not a named insured. Moreover, no loss was sustained by Linda Jordan during the course of her employment with TCA. Accordingly, based on Galatis, Jordan was not an insured under either the Primary Policy or the Excess Policy. Summary Judgment in favor of ICNA was proper.
 {¶ 12} In his supplemental brief, Jordan asserts that we should not apply Galatis retroactively, in accordance with Peerless Elec. Co. v.Bowers (1955), 164 Ohio St. 209, 129 N.E.2d 467, and Chevron Oil Co. v.Huson (1971), 404 U.S. 97, 92 S.Ct. 349, and that we should continue to follow the holding in Ezawa. In Peerless, the Supreme Court of Ohio set forth the general rule regarding retrospective application of judicial decisions:
 {¶ 13} "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." Id. at 210. In Chevron Oil, the United States Supreme Court set forth an analytical framework for determining when to apply case law retroactively:
 {¶ 14} "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that `we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for `(w)here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity.'" Id. at 106-7 (citations omitted).
 {¶ 15} We find no basis to conclude that Galatis should not be applied retroactively. The Galatis court applied its holding to the parties before it, and since the issuance of that decision, the Supreme Court of Ohio has consistently reversed judgments, relying on its decision in Galatis. E.g., Burkhart v. CNA Ins. Co., 100 Ohio St.3d 359,800 N.E.2d 355, 2003-Ohio-6604 (reversing without opinion on the authority of Galatis); Tucker v. Wilson, 100 Ohio St.3d 360,800 N.E.2d 355, 2003-Ohio-6742 (same). It therefore follows that the supreme court intended that its holding in Galatis be applied to open cases still on direct review, such as the present action. Moreover, sinceGalatis, we have applied that case to other Scott-Pontzer-related cases before us. See Clancy v. Erie Ins. Group, Montgomery App. No.,2003-Ohio-6890; Brown v. Pacific Emp. Ins. Co., Darke App. No. 1618,2003-Ohio-6519; Wayne Mut. Ins. Co. v. Allstate Property and Cas. Co.,
Montgomery App. No. 19881, 2003-Ohio-6251. We further note that the United States Supreme Court has unambiguously overruled Chevron Oil inHarper v. Virginia Dept. of Tax., 509 U.S. 86, 97-98, 113 S.Ct. 2510,125 L.Ed.2d 74 ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). Accordingly, we find unpersausive Jordan's argument that Galatis should not be applied to this action.
 {¶ 16} We also find unpersuasive Jordan's claim that Galatis is inapplicable, because it (Galatis) fails the third prong of the stare decisis test set forth in that decision. Specifically, Jordan contends that the Galatis court's overruling of Ezawa creates an undue hardship for those who have relied upon it and, thus, Galatis was wrongly decided.
 {¶ 17} At the outset, we do not find that Jordan has suffered an "undue hardship" due to the decision of the supreme court to overruleEzawa. The car accident at issue occurred in 1986, thirteen years prior to the supreme court's holdings in Scott-Pontzer and Ezawa. There is no evidence in the record that Jordan took any action in reliance upon those decisions, except to file this lawsuit. The fact that subsequent judicial rulings could change the existing case law during the course of a litigation is a risk inherent in any litigation. Without more, the loss of a potential cause of action is not an undue hardship.
 {¶ 18} More importantly, it is not our place to decide whether the supreme court should have abandoned Ezawa and, by extension, whetherGalatis was wrongly decided. The fact remains that the supreme court expressly overruled Ezawa in Galatis, and we must act consistently with that precedent. Having concluded, supra, that Galatis has retroactive application and therefore that its holding governs our analysis, we conclude that the trial court appropriately granted summary judgment to ICNA. We are unpersuaded that remand is necessary, as argued by Jordan, to determine (1) whether the parties intended to afford employees and their families uninsured or underinsured motorist coverage for activities outside of the scope of employment, and (2) the parties' reliance uponEzawa.
 {¶ 19} Jordan's assignments of error are overruled.
II. CROSS-APPEAL OF INSURANCE COMPANY OF NORTH AMERICA
 {¶ 20} I. The Trial Court erred in finding that TCA was not self-insured and was subject to R.C. 3937.18 even though TCA bore all of the risk for any and all claims files, Directly Funded the payment of claims and maintained a $42 million letter of credit to secure payment of claims."
 {¶ 21} II. The Trial Court erred in finding that an issue of fact exists where the evidence demonstrates that: (1) Even if an Insured, Jordan had a duty to timely provide notice of his claim and to protect the subrogation rights of [ICNA]; (2) Jordan failed to do so; and (3) Jordan presented no competent evidence to rebut the presumption that [ICNA] was prejudiced by jordan's breach of the notice and subrogation terms of the primary and excess policies."
 {¶ 22} In its cross-appeal, ICNA asserts that the trial court should have granted summary judgment in its favor on the grounds that TCA was self-insured and thus not required to comply with R.C. 3937.18. ICNA further claims that the trial court erred in finding that genuine issues of material fact existed as to whether Jordan breached the notice and subrogation provisions of the insurance policies. In view of our disposition of Jordan's appeal, which affirms the trial courts' judgment (albeit on grounds other than those relied upon by the trial court), we conclude that ICNA's cross-appeal is moot. See App.R. 12(A)(1)(c).
 {¶ 23} In summary, Jordan's two assignments of error are overruled. ICNA's two assignments of error are overruled as moot.
 {¶ 24} The judgment of the court granting summary judgment in ICNA's favor will be affirmed.
Fain, P.J. and Brogan, J., concur.