WRIGHT, Exr., et al., Appellants,

v.

The CINCINNATI INSURANCE COMPANY, Appellee.

[Cite as *Wright v. Cincinnati Ins. Co.*, 159 Ohio App.3d 154, 2004-Ohio-5932.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20640.

Decided Nov. 5, 2004.

Terence L. Fague and Janice M. Paulus, for appellants.

Colleen M. Blandford and K. Roger Schoeni, for appellee.

WOLFF, Judge.

{¶ 1} Cecilia E. Wright ("Mrs. Wright"), individually and as executor of the estate of James O. Wright Jr. ("Dr. Wright"), and James W. Wright ("James") appeal from a judgment of the Montgomery County Court of Common Pleas that granted the motion of the Cincinnati Insurance Co. ("Cincinnati") for summary judgment and denied their motion for summary judgment.

{¶ 2} We set forth the history of the case in *Wright v. Cincinnati Ins. Co.*, Montgomery App. No. 19802, 2003-Ohio-4201, 2003 WL 21830278 (*"Wright I"*) and repeat it here:

{¶ 3} "On July 2, 1999, Mrs. Wright, Dr. Wright, and their son James, who was three years old at the time, were passengers in an automobile owned and driven by Dr. Wright's father, James O. Wright, Sr. Also a passenger in the car was Essie D. Wright, who was Dr. Wright's mother and James O. Wright, Sr.'s wife. While traveling southbound on I–71 in Kentucky, James O. Wright, Sr. negligently lost control of the vehicle and struck a concrete culvert on the side of the highway. He, his wife, Essie, and their son, Dr. Wright, were killed in the accident. Mrs. Wright and James were seriously injured.

{¶ 4} "At the time of the accident, Mrs. Wright was employed by Miami Valley Hospital, which was insured pursuant to an insurance policy issued by Cincinnati. The policy provided business automobile liability coverage, including uninsured/underinsured-motorist coverage, with a limit of $1 million.

{¶ 5} "On June 29, 2001, Mrs. Wright, individually, as executrix of her husband's estate, and on behalf of her minor son, James, filed a complaint against Cincinnati seeking coverage pursuant to *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.*, 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116. Mrs. Wright has also filed two suits against other insurance companies seeking coverage under various policies that will be described below.

{¶ 6} "In addition to the Cincinnati policy, multiple insurance policies potentially provide coverage for the losses sustained in the July 2, 1999 accident. They include:

{¶ 7} "1. A motor vehicle liability insurance policy issued to James O. Wright, Sr. by State Farm Mutual Automobile Insurance Company, which provides coverage for bodily injury with limits of $50,000 per person and $100,000 per accident. $50,000 has been paid to the estate of Dr. Wright under this policy, and the policy limits have been exhausted by a second payment of $50,000 to an injured passenger unrelated to this lawsuit.

{¶ 8} "2. Three motor vehicle liability policies issued by State Farm Mutual Automobile Insurance Company, providing uninsured/underinsured motorist coverage, each with a limit of $100,000 per person and $300,000 per accident. Mrs. Wright is the named insured on one of these policies, and Dr. Wright is the named insured on the other two policies; Mrs. Wright, Dr. Wright, and James are insureds under all three policies. Under the policy issued to Mrs. Wright, State Farm paid $100,000 to the estate of Dr. Wright. It has also been stipulated that $100,000 is available to James for his injuries. This claim and Mrs. Wright's and James's claims for loss of consortium are pending in the Montgomery County

Court of Common Pleas as *Wright v. State Farm Fire & Cas. Co.*, case No. 01–CV–3437. Mrs. Wright has settled the claim for her own personal injuries.

{¶ 9} "3. An umbrella policy providing uninsured/underinsured motorist coverage issued by State Farm Fire and Casualty Company to Dr. Wright and Mrs. Wright and insuring both them and James. State Farm paid the policy limit of $1 million to the estate of Dr. Wright.

{¶ 10} "4. A business policy issued to Dr. Wright's employer, South Dayton Urological Associates, Inc., by State Farm Fire and Casualty Company with a limit of $2 million. Mrs. Wright contends that this policy provides uninsured/underinsured motorist coverage by operation of law, and this policy is part of Case No. 01–CV–3437.

{¶ 11} "5. A healthcare excess liability policy issued to Miami Valley Hospital by MedAmerica International Insurance, Ltd. with a limit of $25 million. Mrs. Wright contends that this policy provides uninsured/underinsured motorist coverage by operation of law. The Montgomery County Court of Common Pleas granted summary judgment in favor of MedAmerica in Case No. 01–CV–3439 * * *. [On October 23, 2003, we affirmed the trial court's judgment. *Wright v. MedAmerica Internatl. Ins. Ltd.*, Montgomery App. No. 19809, 2003-Ohio-5723, 2003 WL 22429063.]

{¶ 12} "On September 9, 2002, the parties filed stipulated facts, and Mrs. Wright filed a motion for summary judgment. On September 10, 2002, Cincinnati filed a motion for summary judgment, arguing that the amounts already received by the plaintiffs should be setoff against the $1 million policy limit of the Cincinnati policy. Both sides filed responses on September 23, 2002. Mrs. Wright requested that resolution of the argument raised in Cincinnati's motion for summary judgment be deferred until coverage under all of the above-described policies had been determined. She further moved to have the cases consolidated for this purpose. On February 3, 2003, after replies had been filed, the trial court granted Cincinnati's motion and denied Mrs. Wright's motion." *Wright I*, 2003-Ohio-4201, 2003 WL 21830278, at ¶ 2–11.

{¶ 13} Mrs. Wright appealed from the adverse summary judgment rulings, claiming that the trial court erred (1) in its interpretation of R.C. 3937.18(A)(2), (2) in concluding that the Cincinnati policy provided that the policy limit of $1 million must be set off by the amounts available to the plaintiffs from other applicable underinsured-motorist polices, (3) in deciding Cincinnati's motion for summary judgment prior to determining which policies were applicable, and (4) in denying her motion for summary judgment on whether the Cincinnati policy provided coverage for the accident at issue. On August 8, 2003, we sustained each of the assignments of error and remanded the matter to the trial court. *Wright I*. Cincinnati filed a notice of appeal with the Supreme Court of Ohio on

September 20, 2003. On November 5, 2003, the Supreme Court of Ohio limited the holding of *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116, and overruled *Ezawa v. Yasuda Fire & Marine Ins. Co. of Am.*, 86 Ohio St.3d 557, 715 N.E.2d 1142. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. In *Galatis*, the Supreme Court held that absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured- or underinsured-motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs during the course and scope of employment. Id.; *Jordan v. Armsway Tank Transport Inc.*, Darke App. No. 1621, 2004-Ohio-261, 2004 WL 102785, ¶ 10. Any uninsured- or underinsured-motorist coverage to which an employee may have been entitled would not extend to her family members unless the employee was a named insured under the policy. Id.; *Galatis*.

{¶ 14} On December 24, 2003, the Supreme Court declined to hear Cincinnati's appeal. Cincinnati did not file a motion for reconsideration, seeking reversal under *Galatis*. On March 29, 2004, Cincinnati filed a motion in the trial court to return the case to the active docket, based on our remand. On the same date, Cincinnati sought summary judgment on Mrs. Wright's claims, based on *Galatis*. Mrs. Wright contested the motion and filed a cross-motion for summary judgment, arguing that our decision in *Wright I* controlled and, consequently, *Galatis* had no application. She further sought summary judgment that Cincinnati was liable for 47.62 percent of the uncompensated loss on the claim of the estate of Dr. Wright and for 100 percent of the remaining claims.

{¶ 15} The trial court granted Cincinnati's motion for summary judgment and overruled Mrs. Wright's motion. It reasoned that the *Galatis* decision was an intervening decision that permitted the trial court not to apply the law-of-the-case doctrine and, accordingly, permitted it to disregard our prior appellate ruling. The trial court held that it was bound to follow *Galatis* and, therefore, that summary judgment in Cincinnati's favor was proper. Mrs. Wright appeals from this summary judgment ruling.

{¶ 16} Our review of the trial court's decision to grant summary judgment is de novo. See *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d

343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 17} Mrs. Wright raises two assignments of error on appeal.

{¶ 18} "I. The trial court erred in denying plaintiffs' summary judgment motion seeking declaratory relief that plaintiffs have already obtained certain declaratory relief (including judgment that they are insureds) and that *Westfield v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, does not apply, and in granting the insurer's summary judgment motion seeking judgment that plaintiffs are not insured."

{¶ 19} In her first assignment of error, Mrs. Wright asserts that the trial court was bound by our opinion in *Wright I* under the law-of-the-case doctrine. In *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410, the Supreme Court of Ohio explained the law-of-the-case doctrine and the obligation of a court to follow the mandate of a reviewing court upon remand:

{¶ 20} "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.

{¶ 21} "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.

{¶ 22} "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given." (Citations omitted.) *Nolan,* 11 Ohio St.3d at 3, 11 OBR 1, 462 N.E.2d 410.

{¶ 23} The *Nolan* court held that "absent extraordinary circumstances, such as an intervening decision by this court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." Id. at 5, 11 OBR 1, 462 N.E.2d 410.

{¶ 24} Mrs. Wright contends that *Wright I* became the law of the case on December 24, 2003, when the Supreme Court declined jurisdiction over Cincinnati's appeal. Mrs. Wright argues that if Cincinnati believed that it was entitled to judgment based on *Galatis,* Cincinnati was required to file a motion for reconsideration with the Supreme Court, asserting that basis for judgment in its favor.

Having failed to do so, Mrs. Wright claims, Cincinnati has waived its right to raise *Galatis* and it is bound by the law of the case as set forth in *Wright I*. Mrs. Wright also asserts that because *Galatis* was rendered before the Supreme Court denied Cincinnati's appeal, *Galatis* is not an intervening decision and her rights to the insurance benefits had vested. We disagree.

{¶ 25} In support of her assertion that *Wright I* had become a final mandate and that the trial court lacked authority to apply *Galatis*, Mrs. Wright relies, in part, upon *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 649 N.E.2d 1229. In that case, Anthony Wallace was killed in an automobile accident when Lori Watkins, the driver of the car in which he was riding, collided with a truck and another vehicle. After recovering under Watkins's insurance policy, his divorced parents filed claims for underinsured-motorist coverage with their respective insurers. Upon the insurers' requests for a declaratory judgment, the trial court found for the Wallaces. Relying upon *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658, the court of appeals reversed and remanded, reasoning that Watkins had not been underinsured. Its September 4, 1990, entry ordered that "a mandate be sent to the Warren County Court of Common Pleas, for execution upon this judgment." On January 31, 1991, the Supreme Court of Ohio denied further appeal, and the case was remanded to the trial court. In July 1992, the Wallaces filed a motion for judgment in their favor, based on the Supreme Court's May 1992 decision in *Derr v. Westfield Cos.* (1992), 63 Ohio St.3d 537, 589 N.E.2d 1278. On August 5, 1992, the trial court entered judgment, nunc pro tunc, for the insurance companies. The trial court denied the motion, and the court of appeals affirmed.

{¶ 26} On appeal, the Supreme Court likewise affirmed. After reiterating the doctrine of the law of the case, the court emphasized that appeal to the Supreme Court had been denied and, therefore, the trial court was obligated to comply with the mandate of the court of appeals and to enter judgment accordingly. The court rejected the Wallaces' argument that they had moved for judgment prior to the trial court's entry of final judgment. It reasoned:

{¶ 27} "[T]he law of the case was established by the court of appeals, and the trial court was required to act accordingly. A subsequent decision by this court should have had no bearing on the trial court's duty to comply with the decision of the court of appeals. This is true where, as here, an administrative oversight necessitated the use of a *nunc pro tunc* entry." *Transamerica*, 72 Ohio St.3d at 324, 649 N.E.2d 1229.

{¶ 28} We find *Transamerica* to be distinguishable from the case at hand. In *Transamerica*, the case was remanded to the trial court for the purpose of the entry of judgment; there were no additional issues to be resolved. In other words, the trial court had the duty to perform a ministerial act. The Supreme

Court apparently recognized that the case remained active when *Derr* was issued solely due to an "administrative oversight" and, thus, held that the subsequent Supreme Court decision should not apply. Unlike in *Transamerica*, *Galatis* became the controlling law prior to remand, and it was applicable to pending cases at the time that this action was remanded to the trial court, i.e., in December 2003. Thus, unlike the timing of Derr in *Transamerica*, *Galatis* was the controlling law at the time that the trial court could have first taken any action based on *Wright I*. Due to these factual distinctions, we do not find that *Transamerica* governs this action.

{¶ 29} Under the present circumstances, the trial court properly applied *Galatis* and granted summary judgment in favor of Cincinnati. Initially, we agree with Mrs. Wright that *Wright I* became the law of the case when the Supreme Court declined jurisdiction. *Hubbard ex rel. Creed v. Sauline* (1996), 74 Ohio St.3d 402, 405, 659 N.E.2d 781. However, the Supreme Court has stated that the law-of-the-case doctrine is a rule of practice that should not be applied to achieve unfair results. *Nolan*, supra, 11 Ohio St.3d at 3, 11 OBR 1, 462 N.E.2d 410. In our judgment, it would be unjust to allow Mrs. Wright to recover underinsured-motorist benefits despite the fact that *Galatis* had been rendered while the case remained pending and particularly when *Galatis* was rendered between the issuance of *Wright I* and the remand to the trial court. The Supreme Court intended that its holding in *Galatis* be applied to open cases. See *Jordan*, supra, 2004-Ohio-261, at ¶ 15. We see no rational basis to perpetuate the unintended benefits of *Scott–Pontzer* and *Ezawa* when the trial court had the benefit of *Galatis* upon remand. See *Pillo v. Stricklin*, Stark App. No. 2003CA00212, 2004-Ohio-1570, 2004 WL 615754; see, also, *Fish v. Ohio Cas. Ins. Co.*, 101 Ohio St.3d 1210, 2004-Ohio-224, 802 N.E.2d 149 (Lundberg Stratton, J., concurring) (stating that although discretionary appeal was not allowed, the proceedings in the trial court upon remand from the court of appeals should include application of *Galatis*). Because our decision in *Wright I* was rendered prior to *Galatis* and because Cincinnati's appeal came to naught, we have no difficulty finding that *Galatis* was an "extraordinary circumstance" that warranted disregarding *Wright I* upon remand.

{¶ 30} Mrs. Wright claims that Cincinnati's failure to raise the issue of whether she was an insured before the Supreme Court is fatal to Cincinnati's argument. She argues that because *Galatis* was decided prior to the Supreme Court's denial of jurisdiction, Cincinnati was required to seek reconsideration by the Supreme Court on the basis of *Galatis* in order to preserve that issue. She contends that Cincinnati's failure to do so constituted waiver and precluded the insurance company from relying upon *Galatis* in a subsequent motion, citing, e.g., *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391

N.E.2d 343; *Pipe Fitters Union Local No. 392 v. Kokosing Constr. Co., Inc.* (1998), 81 Ohio St.3d 214, 218, 1998-Ohio-465, 690 N.E.2d 515; *Shirley v. Republic–Franklin Ins. Co.* (June 14, 2004), Stark App. No. 2003CA00361. We do not read the cases cited by Mrs. Wright to require that result. Moreover, because the Supreme Court's denial of jurisdiction was not a decision on the merits of Cincinnati's appeal, it was reasonable for Cincinnati to raise *Galatis* before the trial court upon remand.

{¶ 31} Mrs. Wright also argues that her rights to the insurance benefits vested on December 24, 2003, when the Supreme Court declined to hear Cincinnati's appeal. She argues that *Wright I* "was a final declaratory judgment on coverage and the trial court could not re-open that judgment to apply a case decided before the judgment was final." We disagree with Mrs. Wright's characterization of our opinion and judgment. In *Wright I,* we did not enter judgment in her favor. Rather, we "remanded for further proceedings consistent with this opinion." Upon remand, the trial court still had to apply *Wright I* to the facts before it and to enter the judgment. The stacking issue also remained outstanding. Accordingly, although we resolved the issues of coverage under the policy and of Cincinnati's entitlement to a setoff, the case had not yet been finally resolved and no judgment had been issued. Thus, Mrs. Wright had not acquired vested rights under the pre-*Galatis* law. *Gooding v. Natl. Fire Ins. Co. of Hartford,* Stark App. No. 2003CA00199, 2004-Ohio-693, 2004 WL 292064, ¶ 27 ("By filing a declaratory judgment action, appellee has sought to establish that she has a vested right to coverage under the policies issued by Hartford and Continental. However, this right cannot vest until a judgment is secured").

{¶ 32} The first assignment of error is overruled.

{¶ 33} "II. The trial court erred in denying plaintiffs' summary judgment motion seeking declaratory relief that the insurer is liable for 47.62% of $1 million of the uncompensated loss on the claim of the estate of James O. Wright, Jr., for his wrongful death and for 100% of the loss on the remaining claims, up to a maximum of its $1 million policy limit."

{¶ 34} In light of our determination of the first assignment of error, the Wrights' second assignment of error is overruled as moot.

{¶ 35} The judgment of the trial court is affirmed.

Judgment affirmed.

FAIN, P.J., and BROGAN, J., concur.

FAIN, Presiding Judge, concurring.

{¶ 36} I concur fully in the opinion and judgment of this court. I write separately merely to lament the apparent death of the doctrine that issues not raised in the trial court are waived for purposes of appellate review.

{¶ 37} I had intended to write a dissenting opinion in this case. I agree that the law-of-the-case doctrine does not bar application of *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 797 N.E.2d 1256, for all of the reasons so ably set forth in Judge Wolff's opinion for this court. I had thought, however, that Cincinnati Insurance had waived any claim it might have had that the Wrights were not insureds under the policy when it failed to make this argument in the trial court when this case was originally decided in the trial court.

{¶ 38} Fortunately, before I wrote my dissenting opinion, I reread *Westfield Ins. Co. v. Galatis*. It is clear that the insurance company in that case had made no argument in the trial court, or in the court of appeals, that the plaintiffs and their decedent were not insureds under that policy but raised that argument for the first time in its brief in the Supreme Court. I conclude, therefore, that any issues of law an appellee can make in support of a judgment rendered in a trial court can be made at any stage of subsequent proceedings in the litigation. In the circumstances of this case, that may not be an altogether unjust result. I can imagine circumstances, however, where application of this doctrine would be unjust.

{¶ 39} Suppose, for example, that a motorist injured after *Scott–Pontzer* but before *Galatis* makes a claim under an underinsured-motorist provision in a corporate insurance policy. There are two issues. One issue is whether the claimant was an employee at the time of the accident, as opposed to having been merely an independent contractor; the other issue is whether uninsured/underinsured-motorist coverage was properly offered and rejected. Both issues go to a jury. Special interrogatories establish that the jury found for the plaintiff on the employee/independent contractor issue, but found for the defendant on the offer-and-rejection issue, resulting in a verdict and judgment for the defendant. The employee had been on her way home from work at the time of the accident.

{¶ 40} On appeal it is apparent that the trial court erred in submitting the offer-and-rejection issue to the jury because, under prevailing case law, there was never an adequate offer, so the purported rejection of uninsured/underinsured-motorist coverage was ineffective. Before the case is finally disposed of on appeal, however, *Galatis* is decided, and the insurance company argues that it should prevail because even though the plaintiff succeeded in proving to. the satisfaction of the jury that she was an employee, she was not in the course of her employment when the accident occurred, or at least there is no evidence in the record to that effect. Had the plaintiff been aware of the fact that an issue would

be raised concerning whether she was in the course of her employment, however, she would have offered proof that she had agreed to stop at the post office on her way home to mail some important documents for the company. Unless the insurance company is deemed to have waived any argument about the way the employment issue was submitted to the jury, the judgment for the defendant insurance company will have to be affirmed, based upon *Galatis,* and this seems fundamentally unfair to me.

{¶ 41} Where a litigant contemplates that it might argue that a decision of a higher court should be overruled, when and if the litigation should ultimately reach that court, I believe that the litigant has an obligation to raise the issue in the trial court, so that the adverse party can make up an appropriate factual record on that issue. Issues ought not to be tried, and resolved, for the first time in an appellate court.

{¶ 42} Notwithstanding my views on this subject, I recognize that the Ohio Supreme Court, in *Westfield Ins. Co. v. Galatis,* supra, has held otherwise. Therefore, I reluctantly concur in the judgment of this court.