OPINION
{¶ 1} Appellant Federal Insurance Company ("Federal") appeals the July 20, 2004 judgment entry entered by the Tuscarawas County Court of Common Pleas, which supplemented the trial court's June 25, 2004 judgment entry and specifically ordered prejudgment interest from the date of the accident under both the Cincinnati and Federal policies and apportioned damages hereunder. Appellee is the Estate of John McDonald, et al. ("Appellees"). Cincinnati Insurance Company ("Cincinnati") is also an appellee in this case. The following facts give rise to this appeal.
 {¶ 2} On March 11, 1998, John McDonald ("decedent") was killed while a passenger in a vehicle operated by James Warner, Jr. The decedent was survived by his parents, Vernon and Marla McDonald, and two sisters, Lori Scott and Holly Lehigh. With the consent of Cincinnati, Federal and Indiana Insurance Companies, the Estate settled with the tortfeasor's liability insurer for the policy limits of $25,000. In addition, the Estate received $75,000 in UIM benefits from State Farm, the personal auto insurer for Vernon McDonald.
 {¶ 3} At the time of his death, decedent worked at Hicks Roofing, Inc. ("Hicks"). Cincinnati insured Hicks under a commercial auto liability policy and an umbrella policy. The Cincinnati auto policy provided $1,000,000 in express UIM coverage and the umbrella policy provided $4,000,000 in UIM coverage by operation of law. Also, at the time of his death, decedent resided at the home of his parents. Vernon McDonald worked for Greer Industries, Inc. ("Greer"), which was insured under a business auto policy and umbrella policy issued by Federal. The Federal auto policy provided $1,000,000 in express UIM coverage and the umbrella policy provided $20,000,000 in UIM coverage by operation of law.[1]
 {¶ 4} Vernon McDonald, individually and as Administrator of the Estate, presented UIM claims under the Cincinnati and Federal policies. Appellee Lori Scott, who did not reside with decedent or their parents, presented a UIM claim under the business auto policy issued to her employer, Courthouse Café Properties, Ltd., by Indiana Insurance Company ("Indiana"). The Indiana policy provided express UIM coverage in the amount of $1,000,000.
 {¶ 5} Pursuant to appellees' request, this matter proceeded to arbitration. On September 19, 2001, a unanimous arbitration panel determined the total damages for the wrongful death of decedent was $1,800,000 and found decedent was fifteen percent comparatively negligent. Thus, the panel of arbitrators reduced the award by fifteen percent for an award of $1,530,000. The arbitration panel distributed the proceeds as follows: $680,000 to Vernon McDonald; $680,000 to Marla McDonald; $85,000 to Lori Scott; and $85,000 to Holly Lehigh. On September 29, 2001, appellees filed a motion to confirm the arbitration award and for prejudgment interest. The trial court ultimately reduced the arbitration award by $100,000, as set off of the $25,000 received from the tortfeasor and the $75,000 received from Vernon McDonald's personal insurer.
 {¶ 6} On December 3, 2001, Indiana filed a complaint in the Stark County Court of Common Pleas, seeking a declaratory judgment against Farmers Insurance of Columbus, Inc. ("Farmers"),[2] Federal, Cincinnati and appellees. Indiana sought a declaration that the policy it issued to Lori Scott's employer only provided excess coverage for Lori Scott's wrongful death damages caused by decedent's death. Indiana claimed the policies issued by Cincinnati, Federal and Farmers provided primary coverage to any coverage provided by Indiana.
 {¶ 7} On January 11, 2002, Indiana moved for summary judgment against Cincinnati and Federal, asserting its coverage was secondary. On January 16, 2002, Farmers moved to transfer venue to Tuscarawas County. On January 18, 2002, Federal filed a brief in opposition to appellees' motion to reduce the arbitration award to judgment and in opposition to appellees' motion for prejudgment interest. Federal also filed a cross-motion for summary judgment on the issue of coverage under its two policies issued by Greer.
 {¶ 8} On January 31, 2002, Cincinnati filed an amended answer and crossclaim against Federal, asserting pro rata coverage under the Federal and Cincinnati auto policies and contesting coverage under its umbrella policy. Appellees filed a cross-motion for summary judgment against Federal, Cincinnati and Indiana on the issue of coverage and requested confirmation of the arbitration award as well as judgment jointly and severally as to Indiana, Federal and Cincinnati, together with interest thereon from the date of the accident.
 {¶ 9} Subsequently, on March 19, 2002, the Stark County Court of Common Pleas transferred this matter to the Tuscarawas County Court of Common Pleas. On October 16, 2002, the trial court granted appellees' motion for summary judgment against Federal and denied Federal's cross-motion for summary judgment. The trial court concluded Federal owed coverage to decedent and the Estate under the policies issued to Greer. The trial court also awarded prejudgment interest from the date of the arbitration award.
 {¶ 10} Federal filed a timely notice of appeal to this court, assigning as error the trial court's determination that Federal waived coverage issues by proceeding to binding arbitration and awarding prejudgment interest. Appellees cross-appealed, arguing the trial court erred in failing to grant judgment in the full amount of the arbitration award against Federal and abused its discretion in awarding prejudgment interest from the date of the arbitration award. Additionally, appellees filed a notice of appeal of the trial court's denial of coverage under the Cincinnati and Indiana policies, raising as error the trial court's failure to grant judgment in the full amount of the arbitration award against Cincinnati and Indiana and failure to award prejudgment interest from the date of the incident.
 {¶ 11} On appeal, we rendered the following decisions: 1) affirming coverage under Federal's business auto policy and finding the trial court properly pro-rated coverage between the Federal and Cincinnati auto policies; 2) affirming coverage under Coverage A of the Federal umbrella policy; 3) reversing the trial court and declaring coverage existed under the Cincinnati umbrella policy; 4) affirming the trial court's finding no coverage existed under the Indiana policy; 5) affirming the trial court's decision not to grant judgment in full against Federal and Cincinnati; and 6) reversing the trial court's award of prejudgment interest and remanding the matter for determination under Landis v. Grange Mut. Ins.Co., 82 Ohio St.3d 339, 1998-Ohio-387. See Indiana Ins. Co. v. FarmersIns. Co. of Columbus, Tuscarawas App. No. 2002AP110090, 2003-Ohio-4851 and Indiana Ins. Co. v. Farmers Ins. Co. of Columbus, Tuscarawas App. No. 2002AP110089, 2003-Ohio-4855.
 {¶ 12} This court granted Federal's motion to certify a conflict on a broadened coverage endorsement issue. Federal appealed the certified question to the Ohio Supreme Court. Additionally, both Federal and Cincinnati filed discretionary appeals to the supreme court on coverage issues relative to their respective umbrella policies. On November 5, 2003, while these matters were pending, the Ohio Supreme Court issued its decision in Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849 and In re: Uninsured and Underinsured Motorist CoverageCases, 100 Ohio St.3d 302, 2003-Ohio-5888.
 {¶ 13} Subsequently, on December 24, 2003, the supreme court declined jurisdiction of Federal's and Cincinnati's discretionary appeals and also found no conflict existed. Federal and Cincinnati filed motions for reconsideration based upon Galatis and In re: Uninsured and UnderinsuredMotorist Coverage Cases. The supreme court denied the motions for reconsideration, without opinion, on March 3, 2004.
 {¶ 14} On April 5, 2004, Federal filed in the trial court a motion for summary judgment or, in the alternative, relief from judgment based uponGalatis and a motion for reconsideration on the issue of waiver of coverage. Also on April 5, 2004, Federal filed a motion to deny appellees' motion for prejudgment interest. Appellees filed a memorandum in opposition thereto. Cincinnati did not reply or respond to any of these pleadings.
 {¶ 15} Via judgment entry filed on June 25, 2004, the trial court overruled Federal's motion for summary judgment, specifically concludingGalatis had no application to its October 16, 2002 judgment entry. Further, the trial court awarded prejudgment interest from the date of accident, finding that date was the date on which the money became due and payable under Cincinnati's policies. The entry included Civ.R. 54(B) language. Federal filed a notice of appeal from this judgment entry.
 {¶ 16} On July 2, 2004, appellees filed a motion for judgment entry nunc pro tunc on the issues of prejudgment interest as to Federal and the apportionment of damages between Federal and Cincinnati. Cincinnati filed a brief in opposition on July 9, 2004. Pursuant to a judgment entry filed on July 20, 2004, the trial court overruled appellees' motion for judgment entry nunc pro tunc, finding a nunc pro tunc entry to be inappropriate.
 {¶ 17} Rather, the trial court acknowledged it failed to decide all of the matters in the remand orders. Accordingly, the trial court supplemented its June 25, 2004 judgment entry finding "the `date of accident' in this case is the date money became `due and payable' under both the Cincinnati and Federal policies." Judgment Entry, July 20, 2004, at 3. The trial court also apportioned the damages between the Federal and Cincinnati auto policies and the Federal and Cincinnati umbrella policies.
 {¶ 18} It is from this judgment entry Federal appeals setting forth the following assignments of error for our consideration:
 {¶ 19} "I. The trial court erred in failing to apply the intervening decision of the ohio supreme court in Westfield Ins. Co. v. Galatis,
100 Ohio St.3d, 2003-Ohio-5849, on remand to grant federal either summary judgment or relief from judgment.
 {¶ 20} "II. The trial court erred and acted without jurisdiction in entering Judgment on July 20, 2004 against federal on the issue of prejudgment interest and in its apportionment of damages between Federal and Cincinnati Insurance Company.
 {¶ 21} "III. Assuming arguendo that coverage exists after Galatis and that the trial court lacked jurisdiction to enter the July 20 order, the trial court erred in its June 25 order by failing to reapportion any of (sic) damages to cincinnati under its umbrella policy.
 {¶ 22} "IV. Assuming argueno that coverage exists after Galatis, and that the trial court lacked jurisdiction to enter the july 20 order, the trial court erred in: 1) awarding prejudgment interest against federal where no amount was ever due and payable under federal's policies; 2) awarding prejudgment interest from the date of the accident where federal was not notified of the accident or claim until over one year and nine months later; 3) finding federal's excess policy to prorate with cincinnati's umbrella policy.
 {¶ 23} "V. In its october 16, 2002 order, the trial court erred in finding that there was no agreement between the mcdonalds and federal to reserve federal's right to litigate the issue of coverage subsequent to arbitration of damages."
 I {¶ 24} In their First Assignment of Error, Federal maintains the trial court erred in refusing to apply Galatis retroactively. We agree.
 {¶ 25} In support of its First Assignment of Error, Federal contends the doctrine of res judicata does not apply because this court remanded the matter, to the trial court, on the issues of prejudgment interest and apportionment of damages and therefore, a final judgment did not exist. Federal further submits that although the law-of-the-case doctrine would be applicable on remand, in the case sub judice, the doctrine must yield to the Ohio Supreme Court's intervening decision in Galatis.
 {¶ 26} In response to Federal's argument, Cincinnati argues the law-of-the-case doctrine applies because rights vested as to coverage, under Federal's policies, through the monetary judgment rendered against Federal at the arbitration proceedings. Appellees also maintain they have vested rights under Federal's policies. However, in addition to the argument set forth by Cincinnati, appellees further contend res judicata applies because the trial court only had to perform ministerial acts upon remand and the Galatis decision was not an intervening decision that would abrogate the doctrine of the law of the case.
A. The Doctrine of the Law of the Case
 {¶ 27} We begin our analysis of this assignment of error by addressing the applicability of the law-of-the-case doctrine. As noted above, Cincinnati argues this doctrine applies because the parties had vested rights as to coverage through a monetary judgment. Appellees maintain the doctrine applies because Galatis was not an intervening decision and our decision regarding coverage became the law of the case once the Ohio Supreme Court declined jurisdiction in Federal's appeal and overruled Federal's motion for reconsideration.
 {¶ 28} In Hopkins v. Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769, the Ohio Supreme Court discussed the law-of-the-case doctrine and stated as follows:
 {¶ 29} "The law of the case is a longstanding doctrine in Ohio jurisprudence. `[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan, 11 Ohio St.3d at 3, 11 OBR 1,462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. State ex rel. Potain v. Mathews (1979),59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. It is considered a rule of practice, not a binding rule of substantive law. Hubbard ex rel.Creed v. Sauline (1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781."Hopkins at ¶ 15.
 {¶ 30} The Court also explained, in Hopkins, that it has previously recognized an exception to the doctrine of the law of the case in Jonesv. Harmon (1930), 122 Ohio St. 420, wherein it held that an inferior court must take notice of an intervening decision, by a superior court, that is inconsistent with the law of the case. Id. at ¶ 16. Thus, the Court held, in Hopkins, that the decision, in Galatis, constituted extraordinary circumstances that created an exception to the law-of-the-case doctrine because Galatis constituted an intervening decision by a superior court that was inconsistent with the law of the case. Id. at ¶ 18.
 {¶ 31} In the case sub judice, we do not conclude that the vesting of rights, as it pertains to coverage under Federal's policies, precludes the application of Galatis. The vesting of a right is not the controlling factor in determining whether the law-of-the-case doctrine applies. Instead, a party may claim a right, under the doctrine of the law of the case, because a final judgment, by the highest court, is a final determination of an individual's rights. Thus, in the case sub judice, appellees may claim the law-of-thecase doctrine applies, under Federal's policies, not because they received a monetary judgment, but because on appeal to this court, which was the highest court to review this matter, we determined they were entitled to such coverage. However, after making that determination, we remanded this matter, to the trial court, for it to decide the issues of prejudgment interest and apportionment of damages.
 {¶ 32} Further, as noted above, an intervening decision, by a superior court, is an exception to the law-of-the-case doctrine and applies to any decision of an inferior court that is inconsistent with the law of the case. Thus, we conclude the fact that the issue of coverage was no longer pending does not preclude the application of Galatis. Other issues (i.e. the determination of prejudgment interest and apportionment of damages) were pending, in the trial court, when the Ohio Supreme Court issuedGalatis. Therefore, the case remained open and the trial court should have recognized the exception to the law-of-the-case doctrine and appliedGalatis.
 {¶ 33} In addition to the above argument, appellees maintain thatGalatis is not an intervening decision because the Ohio Supreme Court decided Galatis prior to declining jurisdiction in this matter and overruling Federal's motion for reconsideration. Appellees argue that once the Ohio Supreme Court declined jurisdiction over this matter, our mandate became the law of the case. Thus, appellees conclude they were entitled to UIM coverage and prejudgment interest, subject only to a determination as to when the interest should begin and how the damages should be apportioned.
 {¶ 34} Appellees also contend that Galatis is not an intervening decision because in order for a decision to be intervening, it must be decided after the court of final review decides the case, but before the trial court applies the reviewing court's mandate. Appellees point out that the Ohio Supreme Court clearly had the opportunity to applyGalatis, but chose not to do so.
 {¶ 35} We decline to accept appellees' argument of what constitutes an intervening decision. The Ohio Supreme Court has defined an "intervening decision" not in terms of application, but rather substance. That is, an intervening decision is applicable as long as res judicata has not attached and the decision from a superior court differs from the law of the case established by an inferior court. Thus, an "intervening decision" is one which states a rule of law in conflict with the earlier mandate. State ex rel. Crandall, Pheils Wisniewski v. DeCessna
(1995), 73 Ohio St.3d 180, 183, 1995-Ohio-98.
 {¶ 36} Clearly, Galatis is an intervening decision as it narrows the application of Scott-Pontzer, overrules Ezawa v. Yasuda Fire MarineIns. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124 and conflicts with our prior decision finding coverage. Therefore, we conclude Galatis was the controlling law when the trial court had the first opportunity to enter a final judgment in this matter pursuant to our mandate on June 25, 2004 and July 20, 2004.
 {¶ 37} Further, in Pillo v. Stricklin, Stark App. No. 2003CA00212, 2004-Ohio-1570, we declined to apply the law-of-the-case doctrine and recognized Galatis as an intervening decision. In Pillo, after the Ohio Supreme Court declined jurisdiction in an appeal, the trial court appointed an arbitration chairperson and ordered that arbitration occur within sixty days of the trial court's order. Id. at ¶ 11. Continental Casualty Company appealed the trial court's order of arbitration. Id. at ¶ 14. On appeal, we applied Galatis and explained:
 {¶ 38} "We find that, due to the intervening decision issued by the Ohio Supreme Court in Galatis, supra. (sic), the law of the case doctrine is inapplicable and that our previous decision in this matter holding that appellees were entitled to UM/UIM coverage under both policies must be re-examined. * * * We find that the Ohio Supreme Court Galatis case was an `intervening decision' that created extraordinary circumstances justifying such re-examination. * * * Clearly, it would be unjust to allow appellees to recover despite the recent Galatis case simply because they had a previous appeal to this and to the Ohio Supreme Court, which declined jurisdiction, when we currently are applying Galatis to cases that are up on appeal for the first time." Id. at ¶ 25.
 {¶ 39} This court recently reached the same conclusion in Dean v.Grange Mut. Ins. Co., Stark App. No. 2004CA00133, 2005-Ohio-857; Fish v.Ohio Cas. Ins. Co. (Mar. 7, 2005), Stark App. No. 2004CA00096; and Welshv. Indiana Ins. Co. (Mar. 7, 2005), Stark App. No. 2004CA00225.
 {¶ 40} We also reject appellees' argument that the Ohio Supreme Court's refusal to allow Federal's discretionary appeal and denial of its motion for reconsideration meant that Galatis should not be applied. It is well settled that one may not draw any conclusions from the Ohio Supreme court's decision to accept or decline a discretionary appeal.Swetland Co. v. Evatt (1941), 139 Ohio St. 6, 18.
 {¶ 41} The Second District Court of Appeals reached the same conclusion in a case almost factually identical to the case sub judice. In Wright v. Cincinnati Ins. Co., Montgomery App. No. 20640,2004-Ohio-5932, plaintiff filed a complaint, on June 29, 2001, against Cincinnati Insurance Company ("Cincinnati") seeking Scott-Pontzer
coverage. Id. at ¶ 5. On February 3, 2003, the trial court granted Cincinnati's motion for summary judgment and denied plaintiff's motion for summary judgment. Id. at ¶ 12. On August 8, 2003, the court of appeals sustained appellant's appeal and remanded the matter to the trial court. Id. at ¶ 13. Cincinnati filed a notice of appeal, with the Ohio Supreme Court, on September 20, 2003. Id.
 {¶ 42} The Ohio Supreme Court issued its decision, in Galatis, on November 5, 2003. Id. On December 24, 2003, the supreme court declined to hear Cincinnati's appeal. Id. at ¶ 14. Thereafter, on remand, Cincinnati filed a motion with the trial court to return the case to the active docket. Id. The trial court granted Cincinnati's motion and both parties filed motions for summary judgment. Id. The trial court granted Cincinnati's motion and denied plaintiff's motion for summary judgment finding Galatis to be an intervening decision. Id. at ¶ 16. On appeal, the court of appeals affirmed the decision of the trial court. Id. at ¶ 32.
 {¶ 43} The court of appeals considered some of the same arguments set forth by appellants in the case sub judice. Namely, that the law of the case was established on December 24, 2003, when the Ohio Supreme Court declined jurisdiction over Cincinnati's appeal; that because Cincinnati did not file a motion for reconsideration with the supreme court Cincinnati waived its right to raise Galatis; and that Galatis is not an "intervening decision" because it was rendered before the supreme court denied Cincinnati's appeal. Id. at 28-31.
 {¶ 44} In addressing the above arguments, the court of appeals made the following observations. First, that Galatis became the controlling law prior to remand and it was applicable to pending cases at the time that this action was remanded to the trial court, i.e. in December 2003. Thus, the court concluded Galatis was the controlling law at the time the trial court could have first taken any action based on Wright I. Id. at ¶ 28.
 {¶ 45} Second, the court of appeals stated that it agreed with appellant that Wright I became the law of the case when the supreme court declined jurisdiction. Id. at ¶ 29. However, the court of appeals recognized that the law-of-the-case doctrine is a rule of practice which should not be applied to achieve unfair results. Id. The court concluded it would be unjust to allow plaintiff to recover UIM benefits, despite the fact that Galatis had been rendered while the case remained pending and particularly when Galatis was rendered between the issuance ofWright I and the remand to the trial court. Id. Thus, the court concluded that, "[b]ecause our decision in Wright I was rendered prior to Galatis
and because Cincinnati's appeal came to naught, we have no difficulty finding that Galatis was an `extraordinary circumstance' which warranted disregarding Wright I upon remand." Id.
 {¶ 46} Third, the court of appeals concluded that Cincinnati was not required to seek reconsideration by the Ohio Supreme Court on the basis of Galatis in order to preserve the issue. Id. at ¶ 30. The court stated that because the supreme court's denial of jurisdiction was not a decision on the merits of Cincinnati's appeal, it was reasonable for Cincinnati to raise Galatis before the trial court upon remand. Id.
 {¶ 47} Fourth, the court of appeals rejected plaintiff's argument that her rights vested when the supreme court declined to accept Cincinnati's appeal. Id. at ¶ 31. Specifically, plaintiff argued Wright I was a final declaratory judgment on coverage and the trial court could not reopen that judgment to apply a case decided before the judgment was final. Id. The court of appeals disagreed and instead held that in Wright I, it did not enter judgment in favor of plaintiff. Id. Instead, the court of appeals "remanded for further proceedings consistent with this opinion." Id. Thus, on remand, the trial court still had to apply Wright I to the facts before it and enter judgment. Id. The court of appeals also noted the stacking issue remained pending. Id. Accordingly, the case had not yet been finally resolved and no judgment had been issued because a right cannot vest until a judgment is secured. Id.
 {¶ 48} Finally, in Shirley v. Republic-Franklin Ins. Co.,104 Ohio St.3d 638, 2005-Ohio-182, a recent decision from the Ohio Supreme Court, the Court reversed our decision, pursuant to Hopkins v.Dyer, supra, and remanded the matter to the trial court for the application of Galatis. The Shirley case is significant because the Court concluded the doctrine of the law of the case was not applicable even where the trial court's prior decision was challenged in a motion for relief from judgment, pursuant to Civ.R. 60(B)(5), on issues not directly addressed but disposed of in an earlier unappealable decision.
 {¶ 49} Accordingly, based upon the above, we conclude the doctrine of the law of the case is inapplicable and the trial court erred when it declined to apply Galatis as an intervening decision of the Ohio Supreme Court.
B. The Doctrine of Res Judicata[3]
 {¶ 50} In support of its First Assignment of Error, Federal also argues res judicata does not apply because the judgment in the case sub judice was not final. We agree.
 {¶ 51} Specifically, Federal contends the judgment was not final because we remanded this matter, to the trial court, for the court to address the issues of prejudgment interest and apportionment of damages. Appellees respond that res judicata applies because a final determination was made regarding coverage under Federal's policies and the amount of damages. Appellees further maintain that the determination of prejudgment interest and apportionment of damages were only ministerial acts that needed to be performed by the trial court and therefore, res judicata applies.
 {¶ 52} The doctrine of res judicata is defined as "[a] valid, final judgment rendered upon the merits [that] bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp.,73 Ohio St.3d 379, syllabus, 1995-Ohio-331. The doctrine is a substantive rule of law that applies to a final judgment. [Citations omitted.]Hopkins, supra, at ¶ 22.
 {¶ 53} In support of their argument that res judicata applies to preclude the application of Galatis, appellees cite three cases. The first case appellees cite is Phung v. Waste Mgt., Inc., 71 Ohio St.3d 408,1994-Ohio-389. In Phung, the Ohio Supreme Court held "* * * the trial court was precluded from considering on remand the plaintiff's wrongful-discharge claim where that claim had been dismissed and the dismissal had been affirmed on appeal. Although Phung's claim for intentional infliction of emotional distress remained pending, * * * [the Court] held that dismissal of the wrongful-death claim constituted a final judgment on that particular cause of action, and res judicata applied to bar relitigation." Hopkins, supra, at ¶ 21, citing Phung at 412-413.
 {¶ 54} The second case appellees refer to is this court's recent decision in Sheaffer v. Westfield Ins. Co., Holmes App. No. 03CA006,2004-Ohio-6755. Sheaffer involved a complaint for wrongful death and coverage under various insurance policies. Id. at ¶ 2. All parties eventually filed motions for summary judgment regarding the issue of coverage. Id. In a judgment entry dated August 15, 2003, the trial court found in favor of plaintiffs determining they were entitled to coverage under the commercial general liability and umbrella policies. Id. Westfield appealed and this court affirmed in part and reversed in part the trial court's decision. Id. at ¶ 3. Specifically, we found plaintiffs were not entitled to coverage under the commercial general liability policy, but were covered under the umbrella policy. The case was remanded to the trial court for further proceedings. Id.
 {¶ 55} Upon remand, the trial court filed a judgment entry, on October 15, 2003, finding appellees to be covered under the umbrella policy and entitled to $525,000. Id. at ¶ 4. On October 24, 2003, Westfield filed an appeal with the Ohio Supreme Court. Id. at ¶ 5. On November 5, 2003, the Ohio Supreme Court issued its decision in Galatis. Id. On January 21, 2004, the supreme court declined to hear Westfield's appeal. Id.
 {¶ 56} Thereafter, on appeal to this court, we applied the doctrine of the law of the case and found Galatis inapplicable. In doing so, we found the trial court's judgment of August 15, 2003, was in effect throughout the entirety of the original appeal and therefore, appellees had a vested right which could not be abrogated by the Galatis decision. Id. at ¶ 17.
 {¶ 57} The third case appellees refer to is Morton Internatl., v.Continental Ins. Co. (1995), 104 Ohio App.3d 315, which held as follows:
 {¶ 58} "When, in a declaratory judgment action to determine whether property damage was covered or was excluded under either a pollution exclusion or a petroleum exclusion, the court of appeals affirmed summary judgment for the insureds on the pollution-exclusion issue, and this insurer did not appeal this issue to the supreme court, judgment on this issue became final. Id. at 320. When nothing was remanded to the trial court on the pollution exclusion, no justiciable controversy remained on this issue; the trial court was obliged to accept the pollution-exclusion issue as finally decided, notwithstanding an intervening decision of the supreme court on the same subject. Id. On remand, the trial court thus erred in entertaining new motions for summary judgment on the pollution exclusion. Id.
 {¶ 59} We conclude the above-cited cases are distinguishable. Unlike the Sheaffer case, in the case sub judice, upon remand from the court of appeals, the trial court did not enter judgment, pursuant to our mandate, on the issue of prejudgment interest and apportionment of damages. Rather, Federal filed a notice of appeal with the Ohio Supreme Court. We also find the Phung decision factually distinguishable because it involved a final judgment and therefore, res judicata applied to bar relitigation of the wrongful-discharge claim.
 {¶ 60} Finally, the Morton case is also distinguishable from our case because, in Morton, nothing was remanded to the trial court about the pollution-exclusion. Therefore, when no appeal was taken to the Ohio Supreme Court, the court of appeals' decision became final. "In the absence of a remand, the fact that a subsequent decision of the supreme court is handed down on the same subject is immaterial to issues which have been finally resolved." Morton, supra, at 321.
 {¶ 61} We would also note that recently, in Hopkins v. Dyer, supra, the Ohio Supreme Court declined to apply the doctrine of res judicata concluding the doctrine of the law of the case applied, not res judicata, because there was no final judgment as to insurance coverage in that the trial court still had to decide various defenses. Hopkins at ¶ 22. Thus, the fact that issues remain pending, whether they be coverage issues or issues regarding prejudgment interest or apportionment of damages, the existence of pending issues on remand precludes the application of the doctrine of res judicata.
 {¶ 62} Appellees also argue our remand on the issues of prejudgment interest and apportionment of damages only required the trial court to perform a ministerial act. Thus, appellees conclude the trial court was not permitted to reconsider the coverage issue in light of Galatis. We disagree with this argument. As explained by the Ohio Supreme Court inCleveland Elec. Illuminating Co. v. Pub. Utilities Comm. of Ohio (1976),46 Ohio St.2d 105, 110, a "remand" is:
 {¶ 63} "* * * [T]o send back to the original tribunal for further proceedings, generally upon orders or directions from the higher court. When a court acts to remand a cause, it is not itself finally determining the outcome of the cause, nor is it executing a judgment in favor of one of the parties. The judgment is given legal effect when it is executed by the lower tribunal, and the judgment as rendered is that of the tribunal to which the cause had been remanded. [Citation omitted.]"
 {¶ 64} Further, in Frate v. Al-Sol, Inc. (Nov. 24, 1999), Cuyahoga App. No. 76526, the Eighth District Court of Appeals stated the importance of a trial court's entry of judgment upon remand from the trial court. The court explained "[t]he filing of a mandate is not a final appealable order of the common pleas court but is a directive from this court [court of appeals] to the common pleas court to `proceed as if the final order, judgment, or decree had been rendered in it.' Any other conclusion would allow this court [court of appeals] to review its own decision, an obviously improper result." Id. at 3.
 {¶ 65} As noted above, the trial court never entered a final judgment pursuant to our mandate upon remand. Instead, Federal appealed this matter to the Ohio Supreme Court before the trial court entered judgment. Therefore, until the trial court executed the judgment regarding prejudgment interest and apportionment of damages, the judgment was not final and the doctrine of res judicata inapplicable.
 {¶ 66} Federal's First Assignments of Error is sustained. Our disposition of Federal's First Assignment of Error renders Federal's Second, Third, Fourth and Fifth Assignments of Error moot.
 {¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby reversed and remanded for further proceedings consistent with this opinion.
Wise, J. Farmer, J., concurs. Hoffman, P.J., dissents.
[1] Neither the Cincinnati nor the Federal umbrella policies contain a valid and enforceable written offer and rejection/reduction of coverage.
[2] Farmers is Lori Scott's personal carrier and not a party to this appeal.
[3] Appellant Cincinnati does not argue that the doctrine of res judicata is applicable to the case sub judice.