MORTON INTERNATIONAL, INC. et al., Appellees,

v.

CONTINENTAL INSURANCE COMPANY, Appellant.

[Cite as *Morton Internatl., Inc. v. Continental Ins. Co.* (1995), 104 Ohio App.3d 315.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930613.

Decided Jan. 25, 1995.

*Taft, Stettinius & Hollister, Robert G. Stachler, Thomas C. Hill* and *James E. Britain,* for appellees.

*Davis & Young Co., L.P.A.,* and *David J. Fagnilli,* for appellant.

MARIANNA BROWN BETTMAN, Judge.

This is the second appeal concerning the interpretation of language in an insurance policy issued by Harbor Insurance Company, the predecessor in interest of Continental Insurance Company ("Continental" or "the insurer"), to Southwest Specialty Chemicals, Inc., the predecessor in interest of Morton International, Inc., and to American Cyanamid Company (collectively, "the insureds"). Continental is the appellant is this appeal; Morton International and American Cyanamid are the appellees.[1]

---

1. There were originally multiple parties in this action; these are now the only three remaining parties.

## BACKGROUND

In 1974, Southwest entered into an agreement with American Cyanamid Company to produce AVENGE herbicide for Cyanamid at Southwest's plant in West Virginia. In March 1975, Southwest hired the waste hauler Browning Ferris Industries to dispose of the waste generated in the manufacture of AVENGE. From 1975 to 1977, Browning Ferris transported about 2.2 million gallons of hazardous waste from the plant in West Virginia to the Summit National Services Deerfield Dump site in Portage County, Ohio. The Summit site was closed in 1979. However, as part of the settlement of a lawsuit brought by both the state and federal Environmental Protection Agencies, the insureds entered into a consent decree to clean up the Summit site. The insureds seek reimbursement from Continental for these cleanup costs and other costs related to the consent decree ("the Summit National claims").

## THE INSURANCE POLICY AND *MORTON I*

Under the insurance policy at issue, property damage arising out of the discharge, dispersal, release, or escape of specifically defined pollutants is excluded from coverage ("the pollution exclusion").[2] However, there is an exception to the pollution exclusion. By the express terms of the policy the exception, not the exclusion, applies if "such dispersal, release, or escape is sudden and accidental." Thus, if property damage is caused by a release of pollution which is sudden and accidental, it is covered; otherwise, it is not.

There is also an exclusion from coverage for property damage caused by the discharge, dispersal, release or escape of oil or other petroleum substance or derivative into or upon any watercourse or body of water ("the petroleum exclusion"). Unlike the pollution exclusion, the petroleum exclusion does not contain a "sudden and accidental" exception.

Turning first to the pollution exclusion, in the first trial of this lawsuit, the trial court, in declaring the rights of the parties, made two pertinent findings. The first finding was that the property damage from pollution was unexpected and

---

2. The policy states, in pertinent part:
   "THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS
   "This policy shall not apply:
   " * * *
   "(h) to personal injury or property damage arising out of the discharge, dispersal, release or escape of:
   "(1) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such dispersal, release or escape is sudden and accidental."

unintended, thus falling under the policy definition of "an occurrence." The second finding was that the pollution exclusion did not apply to uncontrolled sites.

As to the petroleum exclusion, the trial court found that particular exclusion had no application to the Summit National claims.

The result of the trial court's original decision was to find the insurer obligated to indemnify its insureds for the pollution cleanup costs at the Summit National site.

On appeal from the first decision of the trial court, in *Morton Internatl., Inc. v. Harbor Ins. Co.* (1992), 79 Ohio App.3d 183, 607 N.E.2d 28 ("*Morton I* "), this court first considered the pollution exclusion. Specifically relying on its prior decision in *Kipin Industries, Inc. v. Am. Universal Ins. Co.* (1987), 41 Ohio App.3d 228, 535 N.E.2d 334, and on *Buckeye Union Ins. Co. v. Liberty Solvents & Chemicals Co.* (1984), 17 Ohio App.3d 127, 17 OBR 225, 477 N.E.2d 1227, this court held that the exception to the exclusion applied and that damage from pollution was covered. In interpreting the language of the exception, the court in *Morton I* found the words "sudden and accidental" to be a virtual restatement of the policy definition of "occurrence," under which coverage is afforded so long as the damage is neither expected nor intended. Because the damage was neither expected nor intended, this court reasoned, there was no exclusion under the policy, the property damage from the pollution was covered, and partial summary judgment against Harbor was affirmed on this aspect of the case. Most important, nothing was remanded to the trial court to decide about the pollution exclusion.[3]

This court came to a different conclusion in *Morton I* in regard to the petroleum exclusion. We found that questions of fact existed as to whether the waste which was released consisted of "oil or other petroleum substance or derivative." The case was remanded solely for this determination. No issue dealing with the pollution exclusion was remanded. Moreover, no appeal to the Supreme Court was taken by Continental's predecessor in interest from the decision in *Morton I.*

---

**3.** For the first time in this appeal, Continental attempts to raise the issue of whether the pollution exclusion applies to third-party sites. In its first order declaring the rights of the parties, the trial court expressly found, in paragraph 9, that the pollution exclusion did not apply to uncontrolled third-party sites. That issue was never raised, as an assignment of error or otherwise, in *Morton I* by Continental's predecessor. Errors not treated in a brief will be regarded as having been abandoned. *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392, citing with approval *Uncapher v. Baltimore & Ohio RR. Co.* (1933), 127 Ohio St. 351, 356, 188 N.E. 553, 555. Thus we do not consider this issue to be properly before us now. See, also, App.R. 12(A).

## THE PRESENT APPEAL

█ On the remand of this case, the trial court again granted summary judgment to the insureds, holding that the exception to the pollution exclusion applied, and that the petroleum exclusion did not apply to the Summit National claims. Continental appealed, assigning as error the trial court's ruling granting the insureds' motions for summary judgment and denying its own.

After *Morton I* was remanded, but before summary judgment was entered again, the Ohio Supreme Court decided the case of *Hybud Equip. Corp. v. Sphere Drake Ins. Co.* (1992), 64 Ohio St.3d 657, 597 N.E.2d 1096. In *Hybud,* the Supreme Court was called upon to interpret exactly the same pollution-exclusion-exception language as that in the Harbor policy. The court expressly rejected the view that "sudden and accidental" was virtually synonymous with the policy definition of an occurrence, holding that "sudden" in the context of a pollution-exclusion exception meant abrupt, and not gradual. The interpretation of the pollution exclusion and exception in *Hybud* unquestionably contradicts this court's interpretation of the same language in *Morton I,* and overrules one of the authorities relied on by this court. However, that does not end the matter.

The parties in the present action strongly disagree as to the effect of the *Hybud* decision on this case. Continental argues that it is both controlling and binding and that the application of *Hybud* warrants a reversal of the trial court's decision on the pollution exclusion. The insureds argue that it is only dictum, because, although a unanimous decision, it is not a *per curiam* decision and has no syllabus. See S.Ct.R.Rep.Op. 1(B) and 1(C). As we could not accept the procedural argument of either side as dispositive on the application of the *Hybud* case to the present appeal, we specifically requested supplemental briefing on this issue.

We begin our analysis with the law-of-the-case doctrine enunciated in *Jones v. Harmon* (1930), 122 Ohio St. 420, 172 N.E. 151, and relied on by both sides. The syllabus of *Jones,* which has never been overruled, holds:

"Where, after a definite determination, the Court of Appeals has reversed and *remanded a cause for further action in the trial court, and the unsuccessful party files a motion in this court for an order to certify the record, and such motion is denied,* and the cause is thereupon again tried in the trial court, but, subsequent to the denial of the motion to certify, and prior to the second trial in the trial court, this court lays down a rule of law in conflict with the declaration of the Court of Appeals, it is the duty of the trial court to follow the ruling of this court, and not to do so is reversible error. (*Gohman v. City of St. Bernard* [1924], 111 Ohio St. 726 [146 N.E. 291], distinguished.)" (Emphasis added.)

While we can certainly understand Continental's preference to have us apply the *Hybud* decision in this appeal, and while we are very much aware of our obligation to follow the law as announced by our highest court, we note that despite a clearly adverse ruling by this court in *Morton I* on the pollution exclusion and exception language, Continental's predecessor in interest did not file a motion to certify our decision in *Morton I* to the Ohio Supreme Court.[4] The syllabus of *Jones* has never been expressly modified. Although decided in 1930, *Jones* has been recently cited with approval by the Ohio Supreme Court in *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1994), 70 Ohio St.3d 344, 345, 639 N.E.2d 25, 26.

Continental argues, however, that the requirement that certification be sought as a condition precedent to receiving the benefit of a new Supreme Court decision has been overruled *sub silentio* by the holdings in subsequent cases. Continental contends that the law-of-the-case doctrine cannot be applied when application of the rule would lead to an unjust result, relying upon *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 11 OBR 1, 462 N.E.2d 410; *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 13 O.O.3d 17, 391 N.E.2d 343; and *New York Life Ins. Co. v. Hosbrook* (1935), 130 Ohio St. 101, 3 O.O. 138, 196 N.E. 888. The syllabus of *Nolan* holds that "absent extraordinary circumstances *such as an intervening decision by the Supreme Court,* an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." (Emphasis added.)

We do not need to decide the effect of the *Nolan* syllabus upon the certification requirement in this case. What is crucial to our determination, and the flaw in Continental's argument, is that in *Morton I*, this court remanded nothing to the trial court on the interpretation of the pollution exclusion or the exception thereto. Final judgment, albeit partial, was entered in favor of the insureds on the pollution-exclusion issue.[5] When Continental's predecessor in interest failed to appeal to the Supreme Court, that judgment became final.

---

**4.** Continental's argument in its supplemental memorandum, that it had no need to appeal to the Supreme Court because it "won" in the court of appeals, is meritless. The interpretation of the pollution-exclusion language was wholly adverse to the insurer and nothing was remanded on that issue. By failing to appeal that proposition to the Supreme Court, the disposition by our court became the law of the case and in the words of the Supreme Court, Continental "must endure the consequences of not appealing that decision." *Hawley v. Ritley*, 35 Ohio St.3d at 159, 519 N.E.2d at 393.

**5.** In its entry of partial summary judgment, filed on February 4, 1991, which was the subject of the first appeal of this case, the trial court entered a Civ.R. 54(B) certification that there was no just reason for delay. Thus, such entry was not subject to revision pursuant to Civ.R. 54(B).

■ The mistake made by the trial court on remand was in entertaining new motions for summary judgment, filed by both sides, on the pollution exclusion and exception and on the application of the pollution exclusion to uncontrolled sites. No justiciable controversy remained on these subjects. The trial court and the parties were obliged to accept these issues as finally settled. *Blackwell v. Internatl. Union, United Auto Workers Local No. 1250* (1984), 21 Ohio App.3d 110, 112, 21 OBR 117, 119–120, 487 N.E.2d 334, 338. In the absence of a remand, the fact that a subsequent decision of the Supreme Court is handed down on the same subject is immaterial to issues which have been finally resolved.

Accordingly, the summary judgment granted by the trial court in its July 16, 1993 order on all issues involving the pollution exclusion is vacated, and the original February 4, 1991 entry of partial summary judgment in favor of Morton's predecessor in interest and in favor of Cyanamid on the pollution exclusion, as affirmed by this court in *Morton I*, is hereby reinstated.[6]

## THE PETROLEUM EXCLUSION

We begin our analysis of the petroleum exclusion by noting that the application of the *Hybud* decision is not pertinent to this part of the appeal. Since there is no "sudden and accidental" language in the petroleum exclusion, the *Hybud* decision does not even come into play. In other words, the petroleum exclusion, unlike the pollution exclusion, can operate to exclude coverage under the insurance policy regardless of whether the discharge of pollutants was sudden or accidental.[7]

As to the petroleum exclusion, in *Morton I* we held that it was undisputed that Southwest was engaged in chemical manufacturing and that pollutants had been discharged into the water. *Morton I*, 79 Ohio App.3d at 192, 607 N.E.2d at 34.

---

6. As successor in interest to Harbor Insurance Company, Continental is bound by this entry.

7. The petroleum exclusion states, in pertinent part:
   "THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSIONS
   "This policy shall not apply:
   " * * *
   "(h) to personal injury or property damage arising out of the discharge, dispersal, release or escape of
   " * * *
   "(ii) oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse or body of water, whether or not such discharge, dispersal, release or escape is sudden and accidental but this exclusion shall apply only with respect to operations described as follows:
   " * * *
   "Chemical Manufacturing."

We also held that the terms "upon any watercourse or body of water" as used in the petroleum exclusion included both surface and ground water.[8]

However, we went on to hold that there were genuine issues of material fact on whether the pollution discharged into the water consisted of "oil or other petroleum substance or derivative" and we remanded the matter for further proceedings.

On remand, the trial court again entered summary judgment in favor of Morton and Cyanamid on the petroleum exclusion, and Continental again challenges this in its second assignment of error. Continental argues that the trial court erred in holding the petroleum exclusion inapplicable to the Summit National claims as a matter of law. We agree.

This assignment of error involves the relationship between the consent decree and the insurance policy. The trial court made a specific finding, both in this case and in *Morton I*, that the petroleum exclusion has no application to the Summit National claims. That finding stemmed in some material part from the insureds' unsubstantiated assertion that they had not been ordered to clean up anything that contained petroleum. While we agree that cleanup costs for hazardous substances, pollutants, and contaminants assessed under CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Section 9601 *et seq.*, Title 42, U.S.Code) are to exclude petroleum by the terms of the federal law,[9] that does not automatically mean that there was no petroleum waste cleaned up in the ground or surface waters. The consent decree makes reference to statutes other than CERCLA, such as the Ohio Water Pollution Control Act and the Ohio Solid and Hazardous Waste Act, and to "common law liability in tort."

The insureds may have been assessed cleanup costs for petroleum in the water other than under CERCLA. One part of the trial court's order declares that the petroleum exclusion does not apply to the Summit National claims because the liability which is imposed by the consent decree is based on CERCLA, which does not cover releases of petroleum. Another part of the same order declares

---

**8.** The argument of the insureds that the policy language "into any watercourse or body of water" means only surface water is meritless. Both under CERCLA (Comprehensive Environmental Response, Compensation, and Liability Act of 1980, Section 9601 *et seq.*, Title 42, U.S.Code) and under the Ohio Water Pollution Control Act, the definition of water includes both surface and ground water. See Section 9601(8), Title 42, U.S.Code; R.C. 6111.01(A) and (H).

**9.** It appears that the Consent Decree and the related order of remediation, which are part of this record, imposed cleanup costs against Morton, Cyanamid, and others for hazardous substances, pollutants, and contaminants, as those terms are defined in Sections 9601(14) and 9601(33), Title 42, U.S.Code. Petroleum is specifically excluded from the definitions.

that it is undisputed that the liability of Morton and Cyanamid on the Summit National claims arises *"principally* from non-petroleum materials." (Emphasis added.) On this record, neither ground is sufficient to sustain an award of summary judgment when the pivotal issue of the applicability of the petroleum exclusion depends ultimately not on what Morton and Cyanamid were ordered to clean up, but on what was, in fact, in the waste actually cleaned up.

With respect to the actual contents of the cleaned-up waste, it is clear to us that the evidence remains materially in conflict. The record reflects that on remand each side provided additional material of evidentiary quality in support of its position. The insureds have filed, *inter alia,* the affidavit of Dr. Stephen Levy, a retired Cyanamid research chemist and director of chemical development, in which he declares that "the AVENGE-related waste streams are not oil or another petroleum substance or derivative," and the supplemental affidavit of Richard A. Dennis, a Cyanamid environmental affairs manager, in which he declares that the AVENGE "wastes are neither oil nor a petroleum substance or derivative." On the other hand, Continental has highlighted the earlier testimony of Donald Georgeoff and filed the affidavit of George F. Mather, a practicing chemical engineer who reviewed the documents filed in this case and concluded that "AVENGE waste contained petroleum derivatives."

■ We decline to accept the insureds' argument that the material offered by Continental is not credible. That is not a proper determination in ruling on a summary judgment motion. See *Smith v. Cincinnati Gas & Elec. Co.* (1991), 75 Ohio App.3d 567, 600 N.E.2d 325.

■ We remanded the petroleum issue in *Morton I* for the trial court to decide whether any waste which was released into the ground or surface waters contained petroleum. The trial court clearly erred on remand when it expressly ignored the mandate of this court and entered summary judgment again without addressing what we had specifically identified as the dispositive question in the case. See *Nolan v. Nolan,* syllabus; *State ex rel. Potain v. Mathews.* That question is, on this record, not amenable to summary judgment and must still be answered, because Morton and Cyanamid are only entitled to reimbursement for costs related to nonpetroleum waste.

If, after a proper evidentiary hearing, the trial court finds that waste which was released or discharged into the ground or surface water is not oil or a petroleum substance or derivative, the property damage will be covered. If, on the other hand, the court determines that the waste contains oil or a petroleum substance or derivative, then the petroleum exclusion applies, and there will be no coverage for this property damage.

Accordingly, the July 16, 1993 entry of summary judgment on the issue of the pollution exclusion is vacated and the February 4, 1991 judgment in favor of the insureds on the same issue is reinstated. The July 16, 1993 entry of summary judgment on the issue of the petroleum exclusion is reversed, and this cause is remanded in part for further proceedings on that issue in accordance with this opinion.

*Judgment accordingly.*

SHANNON, P.J., and GORMAN, J., concur.