OPINION
{¶ 1} Appellant Cincinnati Insurance Company ("Cincinnati") appeals the June 25, 2004 and July 20, 2004 judgment entries filed by the Tuscarawas County Court of Common Pleas. Pursuant to these judgment entries, the trial court determined the Ohio Supreme Court's decision inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, had no retroactive application to the October 16, 2002 judgment. The trial court also awarded damages to Appellees Estate of John McDonald, et al. ("Appellees"), under Cincinnati's umbrella policy, and awarded prejudgment interest from the date of the accident. Federal Insurance Company ("Federal") is also an appellee in this action. The following facts give rise to this appeal.
 {¶ 2} On March 11, 1998, John McDonald ("decedent") was killed while a passenger in a vehicle operated by James Warner, Jr. The decedent was survived by his parents, Vernon and Marla McDonald, and two sisters, Lori Scott and Holly Lehigh. With the consent of Cincinnati, Federal and Indiana Insurance Companies, the Estate settled with the tortfeasor's liability insurer for the policy limits of $25,000. In addition, the Estate received $75,000 in UIM benefits from State Farm, the personal auto insurer for Vernon McDonald.
 {¶ 3} At the time of his death, decedent was employed by Hicks Roofing, Inc. ("Hicks"). Cincinnati insured Hicks under a commercial auto liability policy and an umbrella policy. The Cincinnati auto policy provided $1,000,000 in express UIM coverage and the umbrella policy provided $4,000,000 in UIM coverage by operation of law. Also, at the time of his death, decedent resided at the home of his parents. Vernon McDonald worked for Greer Industries, Inc. ("Greer"), which was insured under a business auto policy and umbrella policy issued by Federal. The Federal auto policy provided $1,000,000 in express UIM coverage and the umbrella policy provided $20,000,000 in UIM coverage by operation of law.[1]
 {¶ 4} Vernon McDonald, individually and as Administrator of the Estate, presented UIM claims under the Cincinnati and Federal policies. Appellee Lori Scott, who did not reside with decedent or their parents, presented a UIM claim under the business auto policy issued to her employer, Courthouse Café Properties, Ltd., by Indiana Insurance Company ("Indiana"). The Indiana policy provided express UIM coverage in the amount of $1,000,000.
 {¶ 5} Pursuant to appellees' request, this matter proceeded to arbitration. On September 19, 2001, a unanimous arbitration panel determined the total damages for the wrongful death of decedent was $1,800,000 and found decedent was fifteen percent comparatively negligent. Thus, the panel of arbitrators reduced the award by fifteen percent, equaling $1,530,000. The arbitration panel distributed the proceeds as follows: $680,000 to Vernon McDonald; $680,000 to Marla McDonald; $85,000 to Lori Scott; and $85,000 to Holly Lehigh. On September 29, 2001, appellees filed a motion to confirm the arbitration award and for prejudgment interest. The trial court ultimately reduced the arbitration award by $100,000, as set off for the $25,000 received from the tortfeasor and the $75,000 received from Vernon McDonald's personal insurer.
 {¶ 6} On December 3, 2001, Indiana filed a complaint, in the Stark County Court of Common Pleas, seeking a declaratory judgment against Farmers Insurance of Columbus, Inc. ("Farmers"),[2] Federal, Cincinnati and appellees. Indiana sought a declaration that the policy it issued to Lori Scott's employer only provided excess coverage for Lori Scott's wrongful death damages caused by decedent's death. Indiana claimed the policies issued by Cincinnati, Federal and Farmers provided primary coverage to any coverage provided by Indiana.
 {¶ 7} On January 11, 2002, Indiana moved for summary judgment against Cincinnati and Federal, asserting its coverage was secondary. On January 16, 2002, Farmers moved to transfer venue to Tuscarawas County. On January 18, 2002, Federal filed a brief in opposition to appellees' motion to reduce the arbitration award to judgment and in opposition to appellees' motion for prejudgment interest. Federal also filed a cross-motion for summary judgment on the issue of coverage under its two policies issued to Greer.
 {¶ 8} On January 31, 2002, Cincinnati filed an amended answer and crossclaim against Federal, asserting pro rata coverage under the Federal and Cincinnati auto policies and contesting coverage under its umbrella policy. Appellees filed a crossmotion for summary judgment against Federal, Cincinnati and Indiana on the issue of coverage and requested confirmation of the arbitration award as well as judgment jointly and severally as to Indiana, Federal and Cincinnati, together with interest thereon from the date of the accident.
 {¶ 9} Subsequently, on March 19, 2002, the Stark County Court of Common Pleas transferred this matter to the Tuscarawas County Court of Common Pleas. On October 16, 2002, the trial court granted appellees' motion for summary judgment against Federal and denied Federal's cross-motion for summary judgment. The trial court concluded Federal owed coverage to the decedent and the Estate under the policies issued to Greer. The trial court entered judgment against Federal in the amount of $930,000. The trial court also awarded prejudgment interest from the date of the arbitration award. In this same judgment entry, the trial court also entered a monetary judgment against Cincinnati in the amount of $500,000. Pursuant to this judgment, Cincinnati eventually paid appellees $564,109.59, which includes interest from the date of the arbitration award.
 {¶ 10} Federal filed a timely notice of appeal to this court, assigning as error the trial court's finding that Federal had waived coverage issues by proceeding to binding arbitration and awarding prejudgment interest. Appellees cross-appealed, arguing the trial court erred in failing to grant judgment in the full amount of the arbitration award against Federal and abused its discretion in awarding prejudgment interest from the date of the arbitration award. Additionally, appellees filed a notice of appeal of the trial court's denial of coverage, under the Cincinnati and Indiana policies, raising as error the trial court's failure to grant judgment in the full amount of the arbitration award against Cincinnati and Indiana, and failure to award prejudgment interest from the date of the accident.
 {¶ 11} This court rendered opinions in both cases as follows: 1) affirming coverage under Federal's business auto policy and finding the trial court properly prorated coverage between the Federal and Cincinnati auto policies; 2) affirming coverage under Coverage A of the Federal umbrella policy; 3) reversing the trial court and declaring coverage existed under the Cincinnati umbrella policy; 4) affirming the trial court's finding no coverage existed under the Indiana policy; 5) affirming the trial court's decision not to grant judgment in full against Federal and Cincinnati; and 6) reversing the trial court's award of prejudgment interest and remanding the matter for determination underLandis v. Grange Mut. Ins. Co., 82 Ohio St.3d 339, 1998-Ohio-387. SeeIndiana Ins. Co. v. Farmers Ins. Co. of Columbus, Tusc. App. No. 2002AP110090, 2003-Ohio-4851 and Indiana Ins. Co. v. Farmers Ins. Co. ofColumbus, Tusc. App. No. 2002AP110089, 2003-Ohio-4855.
 {¶ 12} This court granted Federal's motion to certify a conflict on a broadened coverage endorsement issue. Federal appealed the certified question to the Ohio Supreme Court. Additionally, both Federal and Cincinnati filed discretionary appeals to the supreme court on coverage issues relative to their respective umbrella policies. On November 5, 2003, while these matters were pending, the Ohio Supreme Court decidedWestfield Ins. Co. v. Galatis, supra, and In re: Uninsured andUnderinsured Motorist Coverage Cases, 100 Ohio St.3d 302, 2003-Ohio-5888. Subsequently, on December 24, 2003, the supreme court declined jurisdiction of Federal's and Cincinnati's discretionary appeals and also found no conflict existed. Federal and Cincinnati filed motions for reconsideration based upon Galatis and In re: Uninsured and UnderinsuredMotorist Coverage Cases, which the supreme court denied without opinion on March 3, 2004.
 {¶ 13} On April 5, 2004, Federal filed, in the trial court, a motion for summary judgment or, in the alternative, relief from judgment based upon Galatis and a motion for reconsideration on the issue of waiver of coverage. Also, on April 5, 2004, Federal filed a motion to deny appellees' motion for prejudgment interest. Appellees filed a memorandum in opposition thereto. Cincinnati did not reply or respond to any of these pleadings.
 {¶ 14} Via judgment entry filed June 25, 2004, the trial court overruled Federal's motion for summary judgment, specifically concludingGalatis had no application to its October 16, 2002 judgment entry. Further, the trial court awarded prejudgment interest from the date of accident, finding that date was the date on which the money became due and payable under Cincinnati's policies. The entry included Civ.R. 54(B) language. Federal filed a notice of appeal from the entry. This appeal was assigned Tuscarawas App. No. 2004 AP 070051.
 {¶ 15} On July 2, 2004, appellees filed a motion for judgment entry nunc pro tunc on the issues of prejudgment interest as to Federal and the apportionment of damages between Federal and Cincinnati. Cincinnati filed a brief in opposition on July 9, 2004. Pursuant to a judgment entry filed July 20, 2004, the trial court overruled appellees' motion for judgment entry nunc pro tunc, finding a nunc pro tunc entry to be inappropriate.
 {¶ 16} Rather, the trial court acknowledged it failed to decide all of the matters in the remand orders. Accordingly, the trial court supplemented its June 25, 2004 judgment entry, finding "the `date of the accident' in this case is the date money became `due and payable' under both the Cincinnati and Federal policies." Judgment Entry, July 20, 2004, at 3. The trial court also apportioned the damages between the Federal and Cincinnati auto policies and the Federal and Cincinnati umbrella policies.
 {¶ 17} It is from the June 25, 2004 and July 20, 2004 judgment entries Cincinnati appeals. Cincinnati sets forth the following assignments of error for our consideration:
 {¶ 18} "I. This appellate court, and not the trial court, has the plenary power to re-examine the law of the case it previously established in this action, and thereby to apply the subsequent ohio supreme court authority of Westfield v. Galatis, and determine in this subsequent appellate proceeding that the appellee estate is not entitled to underinsured motorists coverage under the cincinnati insurance policies issued to decedent's employer.
 {¶ 19} "II. Exercising it (sic) plenary power to re-examine the law of the case it previously established in this action, through the application of Westfield v. Galatis, this court further has the plenary power to re-examine the law of the case respecting appellees' claim for prejudgment interest and to reject such claim in these subsequent appellate proceedings, because the appellee estate is no longer entitled to underinsured motorist coverage under the cincinnati insurance policies issued to decedent's employer.
 {¶ 20} "III. The trial court committed plain error when it refused to apply the intervening decision of Westfield v. Galatis to this remanded and pending case, to appellant's prejudice.
 {¶ 21} "IV. The trial court erred, to appellant's prejudice, when it proceeded to enter judgment in favor of the appellee estate, a non-moving party, depriving appellant of due process of law.
 {¶ 22} "V. The trial court erred as a matter of law when it entered its judgment of July 20, 2004, inasmuch as the trial court was without jurisdiction in this case due to the prior commencement of appellate proceedings by appellee federal.
 {¶ 23} "VI. The trial court erred, to appellant's prejudice, when it effectively converted or treated a `reply brief' filed by the appellee estate in support of a motion for nunc pro tunc order as a motion for summary judgment or motion for a revision of the court's prior reduction of the arbitrator's award to judgment, depriving appellant of procedural rights under civil rule 56 and due process of law."
 III {¶ 24} We will first address Cincinnati's Third Assignment of Error. In this assignment of error, Cincinnati maintains the trial court committed plain error when it refused to apply Galatis retroactively. Cincinnati contends the trial court has a duty to follow the rule of law of the Ohio Supreme Court rather than apply the law of the case doctrine. We agree.
 {¶ 25} In response to Cincinnati's argument, Federal argues there was no final judgment against either Federal or Cincinnati once we remanded this matter to the trial court and therefore, Galatis applies. Federal also argues Cincinnati is incorrect in its conclusion that Galatis does not apply to Federal. Appellees maintain the doctrine of res judicata applies, not the law-of-the-case doctrine, which precludes the trial court from applying the Galatis decision.
A. The Doctrine of the Law of the Case
 {¶ 26} We begin our analysis of this assignment of error by addressing the applicability of the law-of-the-case doctrine. Cincinnati submits, although the law of the case is the applicable doctrine on remand, the doctrine must yield to an intervening decision of the Ohio Supreme Court which is contrary to the holding on prior appeal. Thus, Cincinnati concludes Galatis applies to the case sub judice.
 {¶ 27} In Hopkins v. Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769, the Ohio Supreme Court discussed the law-of-the-case doctrine and stated as follows:
 {¶ 28} "The law of the case is a longstanding doctrine in Ohio jurisprudence. `[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan, 11 Ohio St.3d at 3, 11 OBR 1,462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. State ex rel. Potain v. Mathews (1979),59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. It is considered a rule of practice, not a binding rule of substantive law. Hubbard ex rel.Creed v. Sauline (1996), 74 Ohio St.3d 402, 404, 659 N.E.2d 781."Hopkins at ¶ 15.
 {¶ 29} The Court also explained, in Hopkins, that it has previously recognized an exception to the doctrine of the law of the case in Jonesv. Harmon (1930), 122 Ohio St. 420, wherein it held that an inferior court must take notice of an intervening decision, by a superior court, that is inconsistent with the law of the case. Id. at ¶ 16. Thus, the Court held, in Hopkins, that the decision, in Galatis, constituted extraordinary circumstances that created an exception to the law-of-the-case doctrine because Galatis constituted an intervening decision by a superior court that was inconsistent with the law of the case. Id. at ¶ 18.
 {¶ 30} In the case sub judice, we do not conclude the vesting of rights, as it pertains to coverage under Cincinnati's auto and umbrella policies, precludes the application of Galatis. The vesting of a right is not the controlling factor in determining whether the law-of-the-case doctrine applies. Instead, a party may claim a right, under the doctrine of the law of the case, because a final judgment, by the highest court, is a final determination of an individual's rights. Thus, in the case sub judice, appellees may claim the law-of-the-case doctrine applies, under Cincinnati's policies, not because they received a monetary judgment, but because on appeal to this court, which was the highest court to review this matter, we determined they were entitled to such coverage. However, after making that determination, we remanded this matter, to the trial court, for it to decide the issues of prejudgment interest and apportionment of damages.
 {¶ 31} Further, as noted above, the intervening decision, by a superior court, is an exception to the law-of-the-case doctrine and applies to any decision of an inferior court that is inconsistent with the law of the case. Thus, we conclude the fact that the issue of coverage was no longer pending does not preclude the application of Galatis. Other issues (i.e. the determination of prejudgment interest and apportionment of damages) were pending, in the trial court, when the Ohio Supreme Court issued Galatis. Therefore, the case remained open and the trial court should have recognized the exception to the law-of-the-case doctrine and applied Galatis.
 {¶ 32} We further conclude that Galatis is an intervening decision as it narrows the application of Scott-Pontzer, overrules Ezawa v. YasudaFire Marine Ins. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124, and conflicts with our prior decision finding coverage. An intervening decision is applicable as long as res judicata has not attached and the decision from a superior court differs from the law of the case established by an inferior court.
 {¶ 33} In Pillo v. Stricklin, Stark App. No. 2003CA00212, 2004-Ohio-1570, we declined to apply the law-of-the-case doctrine and recognized Galatis as an intervening decision. In Pillo, after the Ohio Supreme Court declined jurisdiction in an appeal, the trial court appointed an arbitration chairperson and ordered that arbitration occur within sixty days of the trial court's order. Id. at ¶ 11. Continental Casualty Company appealed the trial court's order of arbitration. Id. at ¶ 14. On appeal, we applied Galatis and explained:
 {¶ 34} "We find that, due to the intervening decision issued by the Ohio Supreme Court in Galatis, supra. (sic), the law of the case doctrine is inapplicable and that our previous decision in this matter holding that appellees were entitled to UM/UIM coverage under both policies must be re-examined. * * * We find that the Ohio Supreme Court Galatis case was an `intervening decision' that created extraordinary circumstances justifying such re-examination. * * * Clearly, it would be unjust to allow appellees to recover despite the recent Galatis case simply because they had a previous appeal to this and to the Ohio Supreme Court, which declined jurisdiction, when we currently are applying Galatis to cases that are up on appeal for the first time." Id. at ¶ 25.
 {¶ 35} This court recently reached the same conclusion in Dean v.Grange Mut. Ins. Co., Stark App. No. 2004CA00133, 2005-Ohio-857; Fish v.Ohio Cas. Ins. Co., Stark App. No. 2004CA00096, 2005-Ohio-1062; and Welshv. Indiana Ins. Co., Stark App. No. 2004CA00225, 2005-Ohio-1114.
 {¶ 36} Based upon the above, we conclude the doctrine of the law of the case is inapplicable and the trial court erred when it declined to apply Galatis as an intervening decision of the Ohio Supreme Court.
B. The Doctrine of Res Judicata
 {¶ 37} We also conclude, under Cincinnati's Third Assignment of Error, that the doctrine of res judicata is inapplicable. Cincinnati maintains the judgment was not final because we remanded this matter, to the trial court, for the court to address the issues of prejudgment interest and apportionment of damages. Appellees respond that res judicata applies because a final determination was made regarding coverage, under Federal's and Cincinnati's policies, and the amount of damages. Appellees further maintain that the determination of prejudgment interest and apportionment of damages were only ministerial acts that needed to be performed by the trial court and therefore, res judicata applies.
 {¶ 38} The doctrine of res judicata is defined as "[a] valid, final judgment rendered upon the merits [that] bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp.,73 Ohio St.3d 379, syllabus, 1995-Ohio-331. The doctrine is a substantive rule of law that applies to a final judgment. [Citations omitted.]Hopkins, supra, at ¶ 22.
 {¶ 39} In support of their argument that res judicata applies to preclude the application of Galatis, appellees cite three cases. The first case appellees cite is Phung v. Waste Mgt., Inc., 71 Ohio St.3d 408,1994-Ohio-389. In Phung, the Ohio Supreme Court held "* * * the trial court was precluded from considering on remand the plaintiff's wrongful-discharge claim where that claim had been dismissed and the dismissal had been affirmed on appeal. Although Phung's claim for intentional infliction of emotional distress remained pending, * * * [the Court] held that dismissal of the wrongful-death claim constituted a final judgment on that particular cause of action, and res judicata applied to bar relitigation." Hopkins, supra, at ¶ 21, citing Phung at 412-413.
 {¶ 40} The second case appellees refer to is this court's recent decision in Sheaffer v. Westfield Ins. Co., Holmes App. No. 03CA006,2004-Ohio-6755. Sheaffer involved a complaint for wrongful death and coverage under various insurance policies. Id. at ¶ 2. All parties eventually filed motions for summary judgment regarding the issue of coverage. Id. In a judgment entry dated August 15, 2003, the trial court found in favor of plaintiffs determining they were entitled to coverage under the commercial general liability and umbrella policies. Id. Westfield appealed and this court affirmed in part and reversed in part the trial court's decision. Id. at ¶ 3. Specifically, we found plaintiffs were not entitled to coverage under the commercial general liability policy, but were covered under the umbrella policy. The case was remanded to the trial court for further proceedings. Id.
 {¶ 41} Upon remand, the trial court filed a judgment entry, on October 15, 2003, finding appellees to be covered under the umbrella policy and entitled to $525,000. Id. at ¶ 4. On October 24, 2003, Westfield filed an appeal with the Ohio Supreme Court. Id. at ¶ 5. On November 5, 2003, the Ohio Supreme Court issued its decision in Galatis. Id. On January 21, 2004, the supreme court declined to hear Westfield's appeal. Id.
 {¶ 42} Thereafter, on appeal to this court, we applied the doctrine of the law of the case and found Galatis inapplicable. In doing so, we determined the trial court's judgment of August 15, 2003, was in effect throughout the entirety of the original appeal and therefore, appellees had a vested right which could not be abrogated by the Galatis decision. Id. at ¶ 17.
 {¶ 43} The third case appellants refer to is Morton Internatl., v.Continental Ins. Co. (1995), 104 Ohio App.3d 315, which held as follows:
 {¶ 44} "When, in a declaratory judgment action to determine whether property damage was covered or was excluded under either a pollution exclusion or a petroleum exclusion, the court of appeals affirmed summary judgment for the insureds on the pollution-exclusion issue, and this insurer did not appeal this issue to the supreme court, judgment on this issue became final. Id. at 320. When nothing was remanded to the trial court on the pollution exclusion, no justiciable controversy remained on this issue; the trial court was obliged to accept the pollution-exclusion issue as finally decided, notwithstanding an intervening decision of the supreme court on the same subject. Id. On remand, the trial court thus erred in entertaining new motions for summary judgment on the pollution exclusion. Id.
 {¶ 45} We conclude the above-cited cases are distinguishable. Unlike the Sheaffer case, in the case sub judice, upon remand from the court of appeals, the trial court did not enter judgment, pursuant to our mandate, on the issue of prejudgment interest and apportionment of damages. Rather, Cincinnati filed a notice of appeal with the Ohio Supreme Court. We also find the Phung decision factually distinguishable because it involved a final judgment and therefore, res judicata applied to bar relitigation of the wrongful-discharge claim.
 {¶ 46} Finally, the Morton case is also distinguishable from our case because, in Morton, nothing was remanded to the trial court about the pollution-exclusion. Therefore, when no appeal was taken to the Ohio Supreme Court, the court of appeals' decision became final. "In the absence of a remand, the fact that a subsequent decision of the supreme court is handed down on the same subject is immaterial to issues which have been finally resolved." Morton, supra, at 321.
 {¶ 47} We would also note that recently, in Hopkins v. Dyer, supra, the Ohio Supreme Court declined to apply the doctrine of res judicata concluding the doctrine of the law of the case applied, not res judicata, because there was no final judgment as to insurance coverage in that the trial court still had to decide various defenses. Hopkins at ¶ 22. Thus, the fact that issues remain pending, whether they be coverage issues or issues regarding prejudgment interest or apportionment of damages, precludes the application of the doctrine of res judicata.
 {¶ 48} Appellees also argue our remand on the issues of prejudgment interest and apportionment of damages only required the trial court to perform a ministerial act. Thus, appellees conclude the trial court was not permitted to reconsider the coverage issue in light of Galatis. We disagree with this argument. As explained by the Ohio Supreme Court inCleveland Elec. Illuminating Co. v. Pub. Utilities Comm. of Ohio (1976),46 Ohio St.2d 105, 110, a "remand" is:
 {¶ 49} "* * * [T]o send back to the original tribunal for further proceedings, generally upon orders or directions from the higher court. When a court acts to remand a cause, it is not itself finally determining the outcome of the cause, nor is it executing a judgment in favor of one of the parties. The judgment is given legal effect when it is executed by the lower tribunal, and the judgment as rendered is that of the tribunal to which the cause had been remanded. [Citation omitted.]"
 {¶ 50} Further, in Frate v. Al-Sol, Inc. (Nov. 24, 1999), Cuyahoga App. No. 76526, the Eighth District Court of Appeals stated the importance of a trial court's entry of judgment upon remand from the trial court. The court explained "[t]he filing of a mandate is not a final appealable order of the common pleas court but is a directive from this court [court of appeals] to the common pleas court to `proceed as if the final order, judgment, or decree had been rendered in it.' Any other conclusion would allow this court [court of appeals] to review its own decision, an obviously improper result." Id. at 3.
 {¶ 51} As noted above, the trial court never entered a final judgment pursuant to our mandate upon remand. Thus, until the trial court executed the judgment regarding prejudgment interest and apportionment of damages, the judgment was not final and the doctrine of res judicata inapplicable. Accordingly, appellees are not entitled to any additional monetary judgment, including prejudgment interest, from Cincinnati. However, appellees are entitled to retain the $564,109.59 previously paid by Cincinnati.
 {¶ 52} Cincinnati's Third Assignment of Error is sustained. We will not address the merits of Cincinnati's First, Second, Fourth or Sixth Assignments of Error based upon our disposition of Cincinnati's Third Assignment of Error.
 V {¶ 53} In its Fifth Assignment of Error, Cincinnati maintains the trial court erred in entering the July 20, 2004 judgment entry because the trial court lacked jurisdiction due to Federal's filing its July 15, 2004 notice of appeal from the June 25, 2004 judgment entry. We disagree.
 {¶ 54} In addressing this issue, we must determine whether the June 25, 2004 judgment entry was a final appealable order. R.C. 2505.02, which governs final orders, provides:
 {¶ 55} "An order that effects a substantial right in an action which in effect determines the action and prevents a judgment, an order that effects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."
 {¶ 56} Although the June 25, 2004 judgment entry included Civ.R. 54(B) "no just reason for delay" language and ordered the Clerk to close the case, we find this language alone is not sufficient to invoke the jurisdiction of this court. Chef Italiano Corp. v. Kent State Univ.
(1989), 44 Ohio St.3d 86. The June 25, 2004 judgment entry did not resolve and determine all the remanded issues; therefore, it was not a final appealable order.
 {¶ 57} The trial court correctly recognized this in the July 20, 2004 judgment entry, noting that "a Judgment Entry Nunc Pro Tunc is inappropriate under these circumstances inasmuch as the undersigned is not of the mind that the further Orders he should issue are not what he actually decided but what he should have decided based on the Remand Orders of the Court of Appeals in both Appellate cases and what he, in fact did not decide. The 6/25/2004 Judgment Entry, in retrospect, only decides partially what the Court of Appeals in their Remand Orders in both Appellate cases directed the undersigned to do." Judgment Entry, July 20, 2004, at 2-3.
 {¶ 58} Because the June 25, 2004 judgment entry was an interlocutory order, Federal's Notice of Appeal taken therefrom did not divest the trial court of jurisdiction. Accordingly, we find the trial court did not err in entering the July 20, 2004 judgment entry.
 {¶ 59} Cincinnati's Fifth Assignment of Error is overruled.
 {¶ 60} For the foregoing reasons, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Wise, J., Farmer, J., concurs. Hoffman, P.J., dissents.
[1] Neither the Cincinnati nor the Federal umbrella policies have a valid and enforceable written offer and rejection/reduction of coverage.
[2] Farmers is Lori Scott's personal carrier and not a party to this appeal.